UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

SILVIA HULSE and NORMAL HULSE,

Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC a/k/a MR. COOPER,

Defendant.

---------------------------------------------------------------

**<u>MEMORANDUM & ORDER</u>**
25-CV-2088 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiffs Silvia Hulse and Norman Hulse commenced the above action on April 15, 2025 against Defendant Nationstar Mortgage LLC, also known as Mr. Cooper, ("Nationstar"), alleging violations of: (1) the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA"); (2) the Truth In Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"); (3) the Fair Debt Collection Practices Act, 15 U.S.C § 1692, *et seq.* (the "FDCPA"); (4) New York General Business Law § 349 ("GBL § 349"); and (5) New York Banking Law § 6-k. (Compl., Docket Entry No. 1.) Plaintiffs seek payment of actual, statutory, and punitive damages arising from Defendant's failure to provide accurate and complete information in response to Plaintiffs' Qualified Written Request ("QWR") for information regarding Plaintiffs' mortgage on a property located at 82 Van Pelt Avenue, Staten Island, New York, 10303 (the "Property").[1] (*Id.*)

[1] On April 21, 2026, the case was transferred from Judge Natasha C. Merle to the Court. (Order dated Apr. 21, 2026.)

On August 6, 2025, Defendant moved to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiffs oppose the motion.[2] For the reasons discussed below, the Court grants Defendant's motion in part and dismisses Plaintiffs' RESPA, TILA, and FDCPA claims. The Court also defers exercising supplemental jurisdiction over Plaintiffs' state-law claims.

## I. Background

### a. The parties

Plaintiffs are New York residents and consumers as defined by the TILA and FDCPA regulations. (Compl. ¶¶ 2, 115, 137.) Nationstar is a Delaware limited liability company that has its principal place of business in Texas. (*Id.* ¶ 3.) Plaintiffs state that Nationstar is a "debt collector" as defined by the FDCPA and a "creditor" as defined by the TILA. (*Id.* ¶¶ 116, 138.) They contend that Bank of America, N.A. assigned the mortgage to Nationstar, and Nationstar acted as both the mortgage noteholder and servicer of Plaintiffs' mortgage loan. (*Id.* ¶¶ 10, 13.)

### b. Factual background

On July 12, 2006 (the "Origination Date"), Plaintiffs executed an adjustable-rate interest note to Countrywide Bank, N.A. in the amount of $312,000 (the "Note"). (*Id.* ¶ 8; *see* Note, annexed to Compl. as Ex. 1, Docket Entry No. 1-1.)[3] On September 21, 2006, Plaintiffs executed a mortgage on the Property for $312,000 to Mortgage Electronic Registration Systems, Inc. as nominee for Countrywide Bank, N.A. ("MERS") (the "Mortgage"). (Compl. ¶ 8; Mortg.,

---

[2] (Def.'s Not. of Mot. to Dismiss ("Def.'s Mot."), Docket Entry No. 16; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), appended to Def.'s Mot., Docket Entry No 16-9; Pls.' Opp'n to Def.'s Mot. ("Pls.' Opp'n"), appended to Def.'s Mot., Docket Entry No 16-12; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), appended to Def.'s Mot., Docket Entry No. 16-13.)

[3] Plaintiffs did not consecutively paginate their exhibits, including the Note, and the Court therefore refers to the portable document format ("PDF") page numbers of the documents.

annexed to Compl. as Ex. 2, Docket Entry No. 1-2.) On June 29, 2012, MERS assigned the Mortgage to The Bank of New York Mellon, formerly known as The Bank of New York, as trustee to JPMorgan Chase Bank, N.A., as trustee for the holders of SAMI II Trust 2006-AR7, Mortgage Pass-Through Certificates, Series 2006-AR7 (the "Bank of New York") (the "First Mortgage Assignment"). (Compl. ¶ 9; First Mortg. Assignment, annexed to Compl. as Ex. 3, Docket Entry No. 1-3.) On July 11, 2012, the Office of the Richmond County Clerk recorded the assignment of the Mortgage to the Bank of New York. (Compl. ¶ 9; First Mortg. Assignment 2.)

On July 31, 2013, the Bank of America, N.A. assigned the Mortgage to Defendant (the "Second Mortgage Assignment").[4] (Compl. ¶ 10; Sec. Mortg. Assignment 3, annexed to Compl. as Ex. 4, Docket Entry No. 1-4.) On August 21, 2013, the Office of the Richmond County Clerk recorded the assignment of the Mortgage to Defendant. (Compl. ¶ 10; Sec. Mortg. Assignment 2.) Plaintiffs state that Specialized Loan Servicing, LLC serviced the Mortgage from September of 2006 to around April 1, 2014. (Compl. ¶ 12.) In 2014, Specialized Loan Servicing, LLC transferred the servicing of the Mortgage to Defendant. (*Id.* ¶¶ 12–13.)

On April 22, 2024, Plaintiffs' attorneys mailed a QWR to Defendant, which sought information regarding the Mortgage loan account. (*Id.* ¶ 14; QWR, annexed to Compl. as Ex. 5, Docket Entry No. 1-5.) Plaintiffs requested an "itemization and explanation of all fees and other amounts charged to [ ] Plaintiffs' account and/or added to the loan balance" since the Origination Date. (Compl. ¶ 14.) On June 3, 2024, Plaintiffs' attorneys received Defendant's response to the QWR (the "QWR Response"), which Plaintiffs contend was "deficient," "disorganized,

---

[4] The Court notes that Plaintiffs do not specify when the Bank of New York assigned the Mortgage to Bank of America, N.A. and therefore, the Court only lists the assignments that Plaintiffs reference in the Complaint.

uncategorized, unlabeled," and contained "duplicative documents." (*Id.* ¶¶ 15, 17; QWR Resp., annexed to Compl. as Ex. 6, Docket Entry No. 1-6.) In addition, Plaintiffs state that the QWR Response included "extremely limited loan history from May 17, 2012, to May 6, 2024" and "deficient escrow account disclosure statements dated between June 27, 2016, and December 27, 2018," which contained "conflicting and unexplained escrow disclosures with missing information, unspecified and unexplained fees and other transactions."[5] (Compl. ¶¶ 18, 20.) Plaintiffs contend that the QWR Response was deficient because it failed to include, in relevant part: (1) any information between the Origination Date and May 17, 2012, (*id.* ¶ 19 (emphasis omitted)); (2) an "explanation or breakdown [ ] of any fees, interest, escrow, or other transactions occurring prior to May 17, 2012," (*id.* ¶ 20); (3) "any explanation or legend regarding the descriptions, transaction codes, and other abbreviations used in the limited transaction summaries," (*id.* ¶ 21); (4) "all communications between servicers and investors," a "complete and itemized statement of the payment history," and "a complete and itemized statement of property inspection fees, property preservation fees, broker opinion fees, appraisal fees, and bankruptcy monitoring fees" between the Origination Date and the QWR Date, (*id.* ¶¶ 22–23);

[5] Plaintiffs contend that examples of the "fees, advances, and other amounts added to the loan balance [that] were excessive, illegal, and/or improper," are: (1) $30,471.80 in lender paid expenses; (2) $12,820.34 in property preservation fees; and (3) $52,321.81 in escrow disbursements. (Compl. ¶¶ 45–46.) In support, Plaintiffs attach to the Complaint three documents "summari[zing] [ ] the fees and other charges" added to their account. (*Id.* ¶ 44.) The first document lists "[l]ender paid expenses" dated between April 9, 2014 and January 7, 2019. (Lender Paid Expenses, annexed to Compl. as Add. A, Docket Entry No. 1-6.) The second document lists "[p]roperty preservation fees" dated between May 17, 2012 and January 3, 2019. (Prop. Preservation Fees, annexed to Compl. as Add. B, Docket Entry No. 1-8.) The third document lists "[e]scrow disbursements" dated between April 4, 2012 and January 14, 2019. (Escrow Disbursements, annexed to Compl. as Add. C, Docket Entry No. 1-9.) As discussed below, these documents do not sufficiently provide information regarding the claimed charges for the Court to infer that they are related to Plaintiffs' alleged claims.

and (5) "statements of all advances and charges against the loan for purposes not reflected in the loan history transaction statement," (*id.* ¶ 23).

Plaintiffs contend that they have "suffered actual damages, including but not limited to, payment of attorneys' fees, loss and reduction of credit, damage to [their] credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and other charges, and emotional distress." (*Id.* ¶ 31.)

**c. RESPA allegations**

Plaintiffs contend that Defendant violated RESPA by: (1) failing to accurately respond to the QWR, (*id.* ¶¶ 70–90); (2) improperly administrating Plaintiffs' escrow account, (*id.* ¶¶ 91–101); and (3) violating RESPA's servicing requirements, (*id.* ¶¶ 102–11). First, Plaintiffs allege that Defendant failed to accurately respond to the QWR because the QWR Response contained "incomplete, inaccurate, and contradictory information regarding their Mortgage loan and account," which Defendant "failed to investigate, correct, or explain."[6] (*Id.* ¶¶ 78, 82.) Second, Plaintiffs allege that Defendant improperly administered Plaintiffs' escrow account by failing to "respond accurately and promptly to [Plaintiffs'] inquir[y] regarding the servicing of their loan" because the QWR Response was incomplete and "contain[ed] inaccurate and contradictory information for overlapping time periods." (*Id.* ¶¶ 93, 96.) Plaintiffs also allege that Defendant "intentionally misrepresented figures, calculations, and other related information" to "manufacture an ongoing escrow deficiency and illegally collect additional fees, interest, and other amounts that [Defendant] would not otherwise be entitled to collect." (*Id.* ¶ 97.) Third,

[6] Plaintiffs allege that Defendant "failed to provide account transaction records for extensive time periods during which Shellpoint serviced the loan." (Compl. ¶ 79.) The Complaint identifies Specialized Loan Servicing, LLC and Defendant as mortgage servicers of the Mortgage, and does not mention Shellpoint. (*Id.* ¶¶ 12–13.) The Court assumes the reference to Shellpoint is a typographical error.

Plaintiffs allege that Defendant violated RESPA's servicing requirements by failing to: (1) "[p]rovide accurate and timely disclosures to Plaintiff[s]"; (2) "[p]rovide Plaintiff[s] with accurate and timely information and documents in response to [their] QWR";[7] (3) "[i]dentify necessary documents or information that may not have been transferred by a transferor servicer and obtain such documents from the transferor servicer"; (4) "[r]etain records documenting actions taken with respect to Plaintiffs' mortgage loan account"; and (5) "[m]aintain a servicing file containing all required documents and data related to Plaintiffs' loan." (*Id.* ¶ 108.)

**d. TILA allegations**

Plaintiffs contend that Defendant violated TILA's servicing practices by receiving dual compensation. (*Id.* ¶¶ 112–33.) In support, Plaintiffs allege that their loan account was "repetitively charged duplicative fees," which constitutes prohibited dual compensation. (*Id.* ¶¶ 120, 132.) In addition, Plaintiffs contend that Defendant "improperly retained funds in a suspense or unapplied funds account," (*id.* ¶ 127), which resulted in "increased interest and other fees charged to Plaintiffs' account," (*id.* ¶ 128).

**e. FDCPA allegations**

Plaintiffs contend that Defendant violated the FDCPA by: (1) collecting prohibited fees, (*id.* ¶¶ 139–47); (2) using false, deceptive, or misleading representations, (*id.* ¶¶ 148–54); and (3) using unfair or unconscionable means to collect a debt, (*id.* ¶¶ 155–60). First, Plaintiffs allege that Defendant collected prohibited fees by (i) charging additional fees that were not "expressly authorized," (*id.* ¶ 143), and (ii) improperly seeking to "collect an artificially inflated debt from [ ] Plaintiffs, resulting from unauthorized and illegal fees, interest, and other charges added to

[7] Plaintiffs allege that "SPS has failed to comply with the servicing requirements and objectives" of RESPA. (Compl. ¶ 108.) As discussed *supra* footnote 6, the Complaint identifies Specialized Loan Servicing, LLC and Defendant as the only mortgage servicers of the Mortgage. (*Id.* ¶¶ 12–13.)

Plaintiffs' loan account," (*id.* ¶ 145). In addition, Plaintiffs contend that Defendant sent Plaintiffs "statements and other documents containing debt collection language and misrepresentations regarding the status of the account and amounts owed, including the illegal fees, interest, and other charges added to Plaintiffs' account." (*Id.* ¶ 146.)

Second, Plaintiffs allege that Defendant used false, deceptive, or misleading representations in notices and other communications sent to Plaintiffs because they contained "debt collection language," "demands for payment of the artificially inflated debt owed on the mortgage, and misrepresentations regarding the status of the account and amounts owed." (*Id.* ¶ 151.) In addition, Plaintiffs contend that Defendant's "actions and failure to correct errors in the Plaintiffs' account have resulted in the addition of improper and illegal fees, interest, and other charges." (*Id.* ¶ 153.) Third, Plaintiffs allege that Defendant used unfair or unconscionable means to collect a debt by improperly seeking "to collect an artificially inflated debt from [ ] Plaintiffs," which consisted of "illegal fees, interest, and other charges." (*Id.* ¶¶ 158–59.)

**f. State law claims**

Plaintiffs allege violations of (1) GBL § 349 and (2) New York Banking Law § 6-k. Plaintiffs assert the same facts as their RESPA, TILA, and FDCPA claims: (1) to support their claim under GBL § 349, (*compare id.* ¶¶ 96–100 (escrow management); ¶¶ 120, 132 (duplicative fees); ¶ 128 (application of payments); ¶¶ 109–11 (maintaining accurate loan data); ¶¶ 106–07 (loss mitigation requirements); ¶¶ 108–09 (disclosure requirements) to *id.* ¶ 166); and (2) to support their claim under the New York Banking Law, (*compare id.* ¶ 99 (annual escrow account statements) to *id.* ¶¶ 178, 184).

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must 'construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor.'" *Singh v. Deloitte LLP*, 123 F.4th 88, 93 (2d Cir. 2024) (quoting *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) ("[The Second Circuit] review[s] *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002))). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Yerkyn v. Yakovlevich*, 164 F.4th 224, 231 (2d Cir. 2026) (quoting *id.*); *see Miller v. McDonald*, 180 F.4th 420, 426 (2d Cir. 2026) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678); *see Knapp v. Barclays PLC*, 171 F.4th 166, 170 (2d Cir. 2026) (quoting same); *Carruthers v. Colton*, 153 F.4th 169, 179 (2d Cir. 2025) (quoting same); *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Matson*, 631 F.3d at 63); *see also Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 544 (2d Cir. 2024) ("[T]he plaintiff's allegations must enable the court to reasonably infer that the defendant is liable for the alleged misconduct." (citing *Iqbal*, 556 U.S. at 678)), *cert. denied*, 146 S. Ct. 880 (2025); *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024) ("[S]urviv[ing] a motion to dismiss . . .

requires 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting same)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see Roe*, 91 F.4th at 651 ("Although all factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *id.*)).

**b. RESPA claims**

Plaintiffs allege four RESPA violations regarding: (1) QWRs pursuant to 12 U.S.C. §§ 2605(e)(1)–(2) and its implementing regulation, 12 C.F.R. § 1024.35; (2) notices of error pursuant to 12 U.S.C. § 2605(f) and its implementing regulation, 12 C.F.R. § 1024.36;[8] (3)

[8] RESPA's implementing regulations define two types of QWRs: (1) notices of errors, which "assert[] an error relating to the servicing of a mortgage loan," 12 C.F.R. § 1024.35(a); and (2) requests for information, which "requests information relating to the servicing of the mortgage loan," 12 C.F.R. § 1024.36(a); *see Manfre v. Fay Servicing, LLC*, No. 24-CV-6067, 2026 WL 807179, at *3 (E.D.N.Y. Mar. 23, 2026) (first quoting 12 C.F.R. § 1024.35; and then quoting 12 C.F.R. § 1024.36). Plaintiffs allege that Defendant violated 12 C.F.R. § 1024.36 because it "failed to investigate, correct, or explain these errors when responding to Plaintiffs' QWRs." (Compl. ¶ 82.) However, Plaintiffs also allege in the Complaint that the QWR was a "request for information." (*Id.* ¶ 1; *see* QWR 1 ("Please treat this letter as a qualified written request under the Federal Servicer Act, which is part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e). Specifically, we are requesting the following information[.]").) *See Manfre*, 2026 WL 807179, at *3 ("[I]n his QWR, [the plaintiff] sought only information or documents about his loan; he did not assert that there was an error in his account. Therefore, the [c]ourt finds that the plaintiff was requesting information in the QWR and considers his allegations under 12 C.F.R § 1024.35(d)(1)." (internal citations omitted)). This is true even if, as here, Plaintiffs discovered errors in the information provided in the QWR Response. *See Owens v. Select Portfolio Servicing, Inc.*, --- F.Supp.3d ---, ---, 2026 WL 1602194, at *3 (E.D.N.Y. June 4, 2026) ("However, the QWR did not, as the plaintiff claims, notify the defendant of errors or require it to correct errors . . . . The plaintiff sought information and documents only about his loan. In short, the plaintiff's QWR was a request for information only, and the [c]ourt evaluates his allegations under 12 U.S.C. § 2605(e)(2)(C)." (internal citations omitted)); *Santhosh v. Wells Fargo Bank, N.A.*, No. 25-CV-1447, 2026 WL 1413883, at *4 (E.D.N.Y. May 20, 2026) ("[The plaintiffs'] claim that both letters 'explicitly asserted errors in account information.' That is not accurate. Neither letter identified any servicing error in the [the plaintiffs'] account, nor

administration of escrow accounts pursuant to 12 U.S.C. § 2605(g) and its implementing regulations, 12 C.F.R. §§ 1024.17 and 1024.34; and (4) force-placed insurance and policies pursuant to 12 U.S.C. §§ 12 U.S.C. 2605(k) and 2605(l) and its implementing regulations, 12 C.F.R. §§ 1024.37 and 1024.38.

To state a RESPA claim, a plaintiff must (1) allege that the defendant violated RESPA *and* (2) identify damages resulting from the defendant's RESPA violation. *See Santhosh v. Wells Fargo Bank, N.A.*, No. 25-CV-1447, 2026 WL 1413883, at *3 (E.D.N.Y. May 20, 2026) (quoting *Kremenchutsky v. Citizens Bank N.A.*, No. 24-CV-1615, 2025 WL 1249623, at *4 (E.D.N.Y. Apr. 30, 2025)); *Thomas v. McCabe, Weisberg & Conway, LLC*, No. 24-CV-7504, 2025 WL 2588749, at *13 (S.D.N.Y. Aug. 15, 2025), *report and recommendation adopted*, 2025 WL 2592351 (S.D.N.Y. Sep. 8, 2025); *Bocci v. Nationstar Mortg. LLC*, No. 23-CV-1780, 2024 WL 3813756, at *8 (S.D.N.Y. June 28, 2024), *report and recommendation adopted*, 2024 WL 4326932 (S.D.N.Y. Sep. 27, 2024); *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 538 (E.D.N.Y. 2015) ("To plead a claim under the RESPA, [the] plaintiff must offer proof either by attaching the letter or pleading with specificity such facts — such as when the letter was sent and to whom it was directed, why it was sent, and the contents of the letter — that the [c]ourt may determine if the letter qualifies as a QWR or notice of error.").

"[T]o survive a motion to dismiss, the complaint must contain factual allegations suggesting that any damages [the] plaintiff suffered were proximately caused by [the]

provided a 'statement of the reasons for the belief . . . that the account is in error.' . . . Instead, both letters merely explained that the [plaintiffs] 'are requesting the following information' and then listed the information requested." (third alteration in original) (internal citations omitted)). The Court therefore finds that Plaintiffs sent a "request for information" QWR and accordingly considers their allegations under 12 C.F.R § 1024.35(d)(1), which is the implementing regulation of 12 U.S.C. § 2605(e).

defendant's violations of [15 U.S.C §] 2605, and conclusory allegations to that effect will not suffice." *Murray v. Newrez LLC* (*Murray I*), No. 24-CV-6160, 2025 WL 2773068, at *3 (E.D.N.Y. Sep. 29, 2025) (first alteration in original) (quoting *Kilgore*, 89 F. Supp. 3d at 539), *appeal docketed*, No. 25-2539 (2d. Cir. filed Oct. 15, 2025); *see Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 264 (S.D.N.Y. 2017) ("Significantly, '[a] plaintiff seeking actual damages under [15 U.S.C.] § 2605 must allege that the damages were proximately caused by the defendant's violation of RESPA.'" (first alteration in original) (quoting *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-CV-3291, 2012 WL 1372260, at *5 (E.D.N.Y. Apr. 18, 2012))); *Gorbaty*, 2012 WL 1372260, at *5 ("A plaintiff bringing a [15 U.S.C.] § 2605 claim must sufficiently allege one of two types of damages: (1) 'actual damages to the borrower as a result of the failure' to comply with [15 U.S.C.] § 2605; or (2) statutory damages 'in the case of a pattern or practice of noncompliance with the requirements' of [15 U.S.C.] § 2605." (quoting 12 U.S.C. § 2605(f))). Because it is not enough for a plaintiff to state that "the servicer's failure to respond to a QWR caused damages without specifying how those damages were caused," *Jackson v. Caliber Home Loans*, No. 18-CV-4282, 2019 WL 3426240, at *7 (E.D.N.Y. July 30, 2019) (quoting *In re Griffin*, No. 10-BR-22431, 2010 WL 3928610, at *4 (Bankr. S.D.N.Y. Aug. 31, 2010)), "[c]ourts commonly dismiss RESPA claims at the pleading stage for failing to adequately alleged proximate cause for damages," *Manfre v. Fay Servicing, LLC*, No. 24-CV-6067, 2026 WL 807179, at *3 (E.D.N.Y. Mar. 23, 2026) (quoting *Urquizo v. Cmty. Loan Servicing LLC*, No. 24-CV-909, 2025 WL 1093073, at *10 (E.D.N.Y. Apr. 11, 2025)); *Bocci*, 2024 WL 3813756, at *8 (quoting *Gorbaty*, 2014 WL 4742509, at *5) (same); *see Sutton*, 228 F. Supp. 3d at 264 ("Significantly, '[a] plaintiff seeking actual damages under [15 U.S.C.]§ 2605 must allege that the damages were proximately caused by the defendant's violation of RESPA . . . . Conclusory

assertions do not suffice." (quoting *Gorbaty*, 2012 WL 1372260, at *5)); *Gorbaty*, 2012 WL 1372260, at *5 ("[C]ourts have consistently dismissed complaints under RESPA if they . . . state merely that in a conclusory fashion the defendant caused damages to the plaintiff."); *Corazzini v. Litton Loan Servicing LLP*, No. 09-CV-199, 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2010) (quoting *In re Griffin*, 2010 WL 3928610, at *4)).

In addition to "any actual damages," borrowers may recover statutory damages of no more than $2,000 for a "pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1)(B); *Manfre*, 2026 WL 807179, at *4 (quoting *id.*); *Jackson*, 2019 WL 3426240, at *9 (quoting same). However, a plaintiff "must first establish actual damages to recover statutory damages." *Santhosh*, 2026 WL 1413883, at *5; *see Manfre*, 2026 WL 807179, at *4 ("[C]ourts in th[e Second] Circuit have held that Section 2605 does not support a claim for statutory damages or fees absent actual damages."); *Murray v. Newrez LLC* (*Murray II*), No. 24-CV-6160, 2025 WL 1158090, at *9 (E.D.N.Y. Apr. 21, 2025) (holding that the plaintiff's "claim for statutory damages under RESPA fails because she has failed to plead actual damages, which are a prerequisite for statutory damages").

**i. "Request for information" QWR**

Defendant argues that the Court should dismiss Plaintiffs' claim for the failure to accurately respond to Plaintiffs' "request for information" QWR. First, Defendant argues that Plaintiffs' "conclusory assertions that they have suffered actual damages do not remotely identify the actual damages that they claim." (Def.'s Mem. 11.) In support, Defendant contends that Plaintiffs do not allege: (1) any incurred attorneys' fees; (2) what injury their credit rating suffered; and (3) any sustained emotional distress. (*Id.*) In addition, Defendant argues that Plaintiffs' claimed damages for improperly added charges to the Mortgage principal are not compensable pursuant to RESPA. (*Id.* at 11–12.) Second, Defendant argues that it properly

responded to the "request for information" QWR because 12 C.F.R. § 1024.35(b) requires response only to Plaintiffs' request for documents related to the servicing of the Mortgage, and Defendant cannot be held liable for failing to respond to inquiries that were unrelated to Defendant's servicing of the Mortgage.[9] (*Id.* at 11.)

Plaintiffs argue that they sufficiently alleged Defendant's failure to accurately respond to the "request for information" QWR. First, Plaintiffs argue that they adequately alleged damages from: (1) Defendant's "withholding [of] the very information needed to identify, challenge, and correct the errors" because they resulted in "the accrual of interest on an illegally inflated principal balance" that Plaintiffs were prevented from stopping, (Pls.' Opp'n 10); (2) the

---

[9] The Court does not address Defendant's argument that Plaintiffs fail to state a claim regarding whether Defendant adequately responded to the "request for information" QWR, because, (1) as discussed *supra* footnote 8, Plaintiffs do not allege any facts regarding a "notice of error" QWR and (2) as discussed below, Plaintiffs' failure to adequately allege actual or statutory damages is an "independent basis" to dismiss their RESPA claims. *See Collazo v. Bank of Am. Inc.*, No. 25-CV-6399, 2026 WL 1865136, at *8 (S.D.N.Y. June 29, 2026) ("[A] plaintiff's failure to adequately plead actual or statutory damages serves as an independent basis for dismissal of RESPA claims."), *appeal docketed*, No. 26-1976 (2d Cir. filed July 21, 2026); *Thomas v. McCabe, Weisberg & Conway, LLC*, No. 24-CV-7504, 2025 WL 2588749, at *13 (S.D.N.Y. Aug. 15, 2025) ("[C]ourts regularly dismiss RESPA complaints at the pleading stage for failing to allege injury and resulting damages that are proximately caused by the loan servicer's failure to adhere to its [RESPA] obligations." (second alteration in original) (quoting *Mongiello v. HSBC Bank USA NA as Tr. for LMT 2006-6 Tr. Fund*, No. 24-CV-2291, 2025 WL 674345, at *7 (S.D.N.Y. Mar. 3, 2025))), *report and recommendation adopted*, 2025 WL 2592351 (S.D.N.Y. Sep. 8, 2025); *Bocci v. Nationstar Mortg. LLC*, No. 23-CV-1780, 2024 WL 3813756, at *10 (S.D.N.Y. June 28, 2024) (declining to address whether the plaintiff stated a RESPA claim because (1) the plaintiff failed to plausibly allege actual damages and (2) the statute of limitations barred the claim), *report and recommendation adopted*, 2024 WL 4326932 (S.D.N.Y. Sep. 27, 2024); *Rosendale v. Mr. Cooper Grp. Inc.*, No. 19-CV-9263, 2021 WL 4066821, at *13 (S.D.N.Y. Sep. 7, 2021) ("Courts in th[e Second C]ircuit have held that 'the plain language of Section 2605 indicates that an allegation of actual damages is necessary to state a claim for liability.'" (quoting *Dolan v. Select Portfolio Servicing* (*Select Portfolio Servicing*), No. 03-CV-3285, 2016 WL 4099109, at *5 (E.D.N.Y. Aug. 2, 2016))); *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 274 (S.D.N.Y. 2017) ("Even had [the p]laintiff alleged a violation of RESPA, she has failed to identify damages that were proximately caused by that violation, and her claims would fail on this independent basis.").

incurred attorneys' fees and costs from filing this action because they are a "foreseeable and direct result of [Defendant's] non-compliance and are recoverable as actual damages," (*id.* at 11); and (3) Defendant's "stonewalling" because the "gnawing uncertainty about the true amount of their debt" and "the constant fear of losing their home" caused emotional distress, (*id.* at 12). In addition, Plaintiffs contend that they sufficiently alleged a "pattern or practice" of non-compliance warranting statutory damages because Defendant's failure to respond to Plaintiffs' "single QWR" is not an isolated mistake, but rather, a "series of distinct but related failures that strongly suggests a policy, or at least a standard practice, of obstructive non-compliance." (*Id.* at 12–13.) Second, Plaintiffs argue that Defendant's "[d]eficient and [e]vasive" QWR Response is an actionable violation of RESPA. (*Id.* at 8–10.) In support, Plaintiffs contend that the "numerous, specific, and actionable failures in [Defendant's] response, including the six-year history gap, the missing fifteen years of escrow statements, and the complete failure to itemize or explain tens of thousands of dollars in fees" is sufficient to allege a RESPA violation. (*Id.* at 10.)

"RESPA is a consumer-protection statute, . . . and it imposes short timeframes for mortgage servicers to respond to potentially detailed inquiries." *Roth v. CitiMortgage Inc.* (*Roth I*), 756 F.3d 178, 181 (2d Cir. 2014) (per curiam).[10] A loan servicer's duties are triggered "if it receives a [QWR], defined as correspondence that identifies a borrower's account and 'includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the

[10] "Congress enacted RESPA to protect consumers from certain 'abusive practices' that had developed 'in some areas of the country' with respect to the settlement process used for residential real estate purchases and sales." *Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 221 (2d Cir. 2015) (quoting 12 U.S.C. § 2601(a)). Under RESPA, certain mortgage loan servicers are required "timely to notify the borrower of the change in servicer and to provide certain other information regarding the transfer." *Id.* (quoting 12 U.S.C. § 2605(c)).

borrower.'" *Id.* (quoting 12 U.S.C. § 2605(e)(1)(B)(ii)); *see Joseph v. Ocwen Fin. Corp.*, No. 22-1042, 2023 WL 3635077, at *1 (2d Cir. May 25, 2023) (summary order) (quoting *Roth I*, 756 F.3d at 181); *Mack v. ResCap Borrower Claims Tr.*, 678 F. App'x 10, 14 (2d Cir. 2017) (quoting same). A private right of action under RESPA § 6(f) arises from a servicer's failure to comply with these provisions. *See* 12 U.S.C. § 2605(f); *Roth v. CitiMortgage Inc.* (*Roth II*), No. 12-CV-2446, 2013 WL 5205775, at *4 (E.D.N.Y. Sep. 11, 2013) ("RESPA requires, *inter alia*, that servicers of 'federally related mortgage loan[s]' respond in a prescribed time and manner to [QWRs] from borrowers and provides a private right of action for violations of the statute." (first alteration in original) (citing 12 U.S.C. §§ 2605(e)–(f))), *aff'd*, 756 F.3d 178 (2d Cir. 2014) (per curiam).

Under RESPA, the servicer of a "federally related mortgage loan" — which includes a loan "secured by a first or subordinate lien on residential real property," 12 U.S.C. § 2602(1)(A), — is required to provide a written response within thirty days of receiving a QWR for information about the servicing of such a loan. *Id.* § 2605(e)(2). Pursuant to RESPA, any section 2605 action must be brought within three years of a violation of the statute. *Id.* § 2614; *see also Reinhart v. CitiMortgage, Inc.*, 677 F. App'x 17, 18 (2d Cir. 2017) (citing 12 U.S.C. §§ 2605(e)(1)–(2)); *Papapietro v. Popular Mortg. Servicing Co.*, No. 13-CV-2433, 2014 WL 5824682, at *6 (E.D.N.Y. Nov. 10, 2014) (citing 12 U.S.C. § 2614), *aff'd sub. nom. Papapietro v. Litton Loan Servicing, LP*, No. 20-1179, 2022 WL 1421404 (2d Cir. May 5, 2022).

The Court dismisses Plaintiffs' "request for information" QWR claim because Plaintiffs have not adequately pleaded actual damages. First, Plaintiffs' claim for "loss and reduction of credit [and] damage to [their] credit rating," (Compl. ¶ 84), fails because they do not allege facts connecting their credit rating to Defendant's failure to provide the requested loan documents.

*See Santhosh*, 2026 WL 1413883, at *6 ("As to their credit score, the [plaintiffs] assert that they suffered 'a loss and/or reduction of credit, and damage to credit rating from [the defendant's] reporting of an inflated and/or unverified debt.' Absent, however, are any facts that would connect their alleged credit damage to [the defendant's] incomplete QWR response." (internal citation omitted)); *Manfre*, 2026 WL 807179, at *4 ("Although the plaintiff alleges that [the defendant]'s response to his QWR caused him 'loss and reduction of credit, damage to his credit rating . . . ' he alleges no facts that connect his credit rating . . . to [the defendant's] failure to provide the loan documents he requested." (internal citation omitted)); *see also Gorbaty*, 2012 WL 1372260, at *5 ("[C]ourts have consistently dismissed complaints under RESPA if they . . . state merely that in a conclusory fashion the defendant caused damages to the plaintiff."). Therefore, Plaintiffs do not sufficiently allege actual damages for "loss and reduction of credit [and] damage to [their] credit rating," (Compl. ¶ 84).

Second, Plaintiffs' claim for "emotional distress," (*id.*), also fails because Plaintiffs allege no facts connecting their emotional distress to Defendant's failure to provide the requested loan documents. *See Santhosh*, 2026 WL 1413883, at *6 ("[T]he [plaintiffs] have failed to plausibly plead that the insufficient response to QWR [ ] was itself the proximate cause of any emotional harm."); *Manfre*, 2026 WL 807179, at *4 ("Although the plaintiff alleges that [the defendant]'s response to his QWR caused him ' . . . emotional distress,' he alleges no facts that connect his . . . emotional distress to [the defendant's] failure to provide the loan documents he requested." (internal citation omitted)); *Murray II*, 2025 WL 1158090, at *8 ("[The plaintiff] has also failed to plead that the emotional distress she suffered constitutes actual damages . . . [because] [t]he [a]mended [c]omplaint's allegations of emotional distress are traceable with respect to the terms and effect of the 2011 [l]oan [m]odification, and not to [the] defendants' alleged violations of

RESPA."); *Rosendale v. Mr. Cooper Grp. Inc.*, No. 19-CV-9263, 2024 WL 1484248, at *9 (S.D.N.Y. Apr. 5, 2024) ("[T]he evidence indicates [the p]laintiff's mental health issues are traceable to the stressful situation he finds himself in with respect to a potential foreclosure and not to [the d]efendants' . . . violation[] of RESPA."); *Hicks v. Wells Fargo Bank, N.A.*, No. 19-CV-6253, 2020 WL 3172771, at *3 (W.D.N.Y. June 15, 2020) ("[The p]laintiff's conclusory, rote allegations of 'stress and emotional distress' occasioned by [the defendant's] alleged violations, . . . are insufficient to make out a facially valid claim for damages." (internal citation omitted)); *see also Sutton*, 228 F. Supp. 3d at 275 ("[The p]laintiff cannot disentangle the distress that was occasioned by the loan modification into which she voluntarily entered from that which may have been occasioned by [the d]efendant's failure to respond fully to any of her requests for information . . . and for this reason has not alleged actionable emotional distress damages."); *Roth II*, 2013 WL 5205775, at *8 ("Even if [the] plaintiff and her husband suffered emotional distress from the possible loss of their home, [the] plaintiff has not alleged that this injury was proximately caused by [the] defendant's failure to comply with RESPA, *i.e.*, the form and timing of its response to [the] plaintiff's letters."). Therefore, Plaintiffs do not sufficiently allege actual damages based on its allegations of "emotional distress," (Compl. ¶ 84).

Third, Plaintiffs' claim for "increased debt and financial burden resulting from improperly imposed fees, interest, and other charges," (*id.*), fails because Plaintiffs submitted a request for information, not a notice of error, and Plaintiffs cannot claim damages "resulting from improperly imposed fees, interest, and other charges," (*id.* ¶ 31), without showing that they submitted a notice of error. *See Owens v. Select Portfolio Servicing, Inc.*, --- F. Supp. 3d ---, ---, 2026 WL 1602194, at *3 (E.D.N.Y. June 4, 2026) ("[T]he plaintiff did not claim any error in the QWR; he only requested information. Thus, the plaintiff 'cannot maintain that [he] was

damaged by [the defendant's] claimed failure to correct any specific error in [his] account.'" (second, third, and fourth alterations in original) (quoting *Jackson*, 2019 WL 3426240, at *8)); *Santhosh*, 2026 WL 1413883, at *6 ("[T]he [plaintiffs] allege no facts supporting their allegations that [the defendant's] response proximately caused them the financial burden of 'being forced to make payments on an inflated and unverified loan balance' and accrue and pay 'excess interest on such unverified principal.'"); *Murray I*, 2025 WL 2773068, at *3 (concluding that the plaintiff's claimed improper interest was "never subject to correction from her QWRs in the first place because they stem from a modification — rather than servicing — of the loan"); *Jackson*, 2019 WL 3426240, at *8 ("[S]ince [the court] ha[s] already found that none of the correspondence was a notice of error, [the] plaintiff cannot maintain that she was damaged by [the defendant's] claimed failure to correct any specific error in her account."). Therefore, Plaintiffs do not sufficiently allege actual damages based on their allegations of "increased debt and financial burden resulting from improperly imposed fees, interest, and other charges," (Compl. ¶ 84).

Fourth, Plaintiffs' claim for attorneys' fees fails because the litigation cost of bringing a RESPA action does not qualify as actual damages. *See Murray II*, 2025 WL 1158090, at *8 ("The litigation costs of a RESPA action do not qualify as actual damages."); *Jackson*, 2019 WL 3426240, at *8–9 ("[T]he costs of bringing a RESPA claim are 'insufficient to establish an entitlement to actual damages under § 2605.'"); *see also Sutton*, 228 F. Supp. at 274–75 ("To permit a cause of action based on incidental costs would transform virtually all unsatisfactory borrower inquiries into RESPA lawsuits, and, in so doing, would subvert the very reason for the damages requirement in the first place."). Therefore, Plaintiffs do not sufficiently allege actual

damages for attorneys' fees resulting from Defendant's alleged non-compliance with RESPA, (Compl. ¶ 31).

In addition, Plaintiffs have not adequately pleaded statutory damages. Plaintiffs argue that Defendant's servicing errors "persist[ing] over the course of at least [ten] years without correction" demonstrates "a pattern and practice of noncompliance" with RESPA, for which Plaintiffs are entitled to statutory damages. (*Id.* ¶¶ 87, 89; *see* Pls.' Opp'n 9–10.) However, because Plaintiffs have not adequately pleaded actual damages, their claim for statutory damages under RESPA fails.[11] *See Owens*, 2026 WL 1602194, at *5 ("[C]ourts in th[e Second C]ircuit have held that Section 2605 does not support a claim for statutory damages or fees absent actual damages. Consequently, the plaintiff's claim for statutory damages under RESPA fails because he has not pled actual damages." (citations omitted)); *Murray II*, 2025 WL 1158090, at *9 ("Even had [the plaintiff] shown a pattern or practice of noncompliance, her failure to plead actual damages related to [the] defendants' failure to acknowledge and respond to her letter requests precludes the survival of her claim on statutory damages alone."); *Jackson*, 2019 WL 3426240, at *8–9 (finding that "[b]ecause plaintiff has not alleged any actual damages under the

---

[11] Even if Plaintiffs had properly pleaded actual damages, they nevertheless fail to allege a "pattern or practice of noncompliance" that would entitle them to statutory damages because the Complaint alleges RESPA violations based only on Defendant's failure to adequately respond to the "request for information" QWR, which does not constitute a "pattern or practice of noncompliance." *See Murray v. Newrez LLC* (*Murray II*), No. 24-CV-6160, 2025 WL 1158090, at *9 (E.D.N.Y. Apr. 21, 2025) ("Though the statute does not specify a set number of violations needed to plead 'a pattern or practice of noncompliance,' courts in th[e] [Second] Circuit have held that two violations of RESPA are insufficient to support a claim for statutory damages."); *Jackson v. Caliber Home Loans*, No. 18-CV-4282, 2019 WL 3426240, at *9 (E.D.N.Y. July 30, 2019) ("Even if [the] plaintiff had properly pleaded actual damages, [the] plaintiff has nonetheless failed to allege a pattern or practice of noncompliance that would entitle her to statutory damages . . . because her [complaint] alleges at most two violations of RESPA based on [the defendant's] failure to adequately respond to her February and March [l]etters."); *see also Sutton*, 228 F. Supp. 3d at 276 ("[The p]laintiff's allegations of widespread misconduct by [the d]efendant are wholly conclusory, and inadequate to support a claim under RESPA.").

statute and therefore cannot establish liability, she cannot seek statutory damages”); *Bonadio v. PHH Mortg. Corp.*, No. 12-CV-3421, 2014 WL 522784, *5 (S.D.N.Y. Jan. 13, 2014) (“Although RESPA permits recovery of both actual and statutory damages, ‘proof of actual damages is mandatory to recover on a § 2605(e) violation, and [ ] a § 2605(e) claim cannot stand on statutory damages alone.’” (alteration in original)); *see also Dolan v. Select Portfolio Servicing* (*Select Portfolio Servicing*), No. 03-CV-3285, 2016 WL 4099109, at *5 (E.D.N.Y. Aug. 2, 2016) (collecting cases).

The Court therefore grants Defendant’s motion and dismisses Plaintiffs’ “request for information” QWR claim because: (1) Plaintiffs do not allege any facts regarding a “notice of error” QWR; (2) Plaintiffs do not sufficiently allege any actual damages arising from the “loss and reduction of credit [and] damage to [their] credit rating,” “emotional distress,” “increased debt and financial burden resulting from improperly imposed fees, interest, and other charges,” (Compl. ¶ 84), and attorneys’ fees, (*id.* ¶ 31); and (3) Plaintiffs do not sufficiently allege any statutory damages because (i) they do not sufficiently plead actual damages and (ii) they fail to allege a “pattern or practice of noncompliance.” *See Bocci v. Nationstar Mortg. LLC*, No. 23-CV-1780, 2024 WL 4326932, at *7 (S.D.N.Y. Sep. 27, 2024) (dismissing RESPA claim because the plaintiff did not plead facts supporting her “claim that particular deficiencies in [the d]efendants’ responses to the QWRs — as opposed to her defaulting on her mortgage and being subjected to foreclosure proceedings — caused her alleged injuries”).

**ii. Improper administration of escrow accounts**

Defendant argues that Plaintiffs’ claims alleging improper administration of their escrow account pursuant to 12 C.F.R. §§ 1024.17 and 1024.34 fails to state a claim because these statutes do not provide for a private cause of action. (Def.’s Mem. 12–13.) Defendant contends that 12 U.S.C. § 2609, which implements 12 C.F.R. §§ 1024.17 and 1024.34, does not provide a

private right of action, as Congress did not provide a statute of limitations or remedies for violations of 12 U.S.C. § 2609. (*Id.* (collecting cases).)

Plaintiffs argue that while 12 C.F.R. §§ 1024.17 and 1024.34 do not provide a private right of action under 12 U.S.C. § 2609, Plaintiffs have sufficiently alleged an actionable claim under 12 U.S.C. § 2605(e)[12] arising from Defendant's "failure to provide fifteen years of escrow statements and its inability to produce a coherent six-year loan history," which provides a private right of action. (Pls.' Opp'n 14.)

Pursuant to 12 U.S.C. § 2609(a), a lender may not require the borrower to:

> deposit in any escrow account which may be established in connection with such loan for the purpose of assuring payment of taxes, insurance premiums, or other charges with respect to the property, in connection with the settlement, an aggregate sum (for such purpose) in excess of a sum that will be sufficient to pay such taxes, insurance premiums and other charges . . . .

12 U.S.C. § 2609(a); *Dolan v. Fairbanks Cap. Corp.*, 930 F. Supp. 2d 396, 417 (E.D.N.Y. 2013) (quoting *id.*). Courts in the Second Circuit have dismissed Section 2609 claims because the statute does not provide a private right of action. *See Collazo v. Bank of Am. Inc.*, No. 25-CV-6399, 2026 WL 1865136, at *4 (S.D.N.Y. June 29, 2026) (collecting cases), *appeal docketed*, No. 26-1976 (2d Cir. filed July 21, 2026); *Owens*, 2026 WL 1602194, at *6 (finding no private

[12] In the Complaint, Plaintiffs cite 12 U.S.C. § 2605(g), rather than 12 U.S.C. § 2605(e). (*See* Compl. ¶¶ 91–99.) 12 U.S.C. § 2605(g) requires servicers to make timely escrow payments, and 12 U.S.C. § 2605(e) requires loan servicers to respond to borrower inquiries. Neither 12 U.S.C. § 2605(g) nor 12 U.S.C. § 2605(e) discuss escrow account disclosures. Moreover, Plaintiffs assert violations of 12 C.F.R. §§ 1024.17 and 1024.34, (*see* Compl. ¶¶ 91–101), which are the implementing regulations of 12 U.S.C. § 2609. The Court therefore analyzes Plaintiffs' claim pursuant to 12 U.S.C. § 2609. *See Collazo*, 2026 WL 1865136, at *4 ("Although [the p]laintiff does not mention § 2609 of RESPA in his original complaint or the [amended complaint], the section he alleges [the d]efendant violated, 12 C.F.R. § 1024.17 is . . . the implementing regulation of 12 U.S.C. § 2609." (internal citation omitted)); *Manfre*, 2026 WL 807179, at *5 ("[E]ven if the plaintiff does not cite Section 2609 in the complaint, he asserts violations of 12 C.F.R. § 1024.17, which is the implementing regulation of 12 U.S.C. § 2609.").

right of action); *Manfre*, 2026 WL 807179, at *5 ("Although the Second Circuit has not addressed the issue, the Fourth, Fifth, and Seventh Circuits, as well as most courts in th[e Second] Circuit, have concluded that there is no private right of action under 12 U.S.C. § 2609 or 12 C.F.R. § 1024.17."); *Romain v. Webster Bank N.A.*, No. 23-CV-5956, 2025 WL 50919, at *2 (E.D.N.Y. Jan. 8, 2025) (collecting cases), *aff'd*, No. 25-316, 2025 WL 3537344 (2d Cir. Dec. 10, 2025) (summary order); *Herman v. Mr. Cooper Grp. Inc.*, No. 22-CV-8952, 2023 WL 6960283, at *2 (S.D.N.Y. Oct. 20, 2023) ("Courts in th[e Second] Circuit have concluded that no private right of action exists under Section 2609 of RESPA or its implementing regulation, 12 C.F.R. § 1024.17."); *Dolan*, 930 F. Supp. 2d at 418 ("This [c]ourt, however, agrees with the reasoning of other courts within th[e Second] Circuit that have concluded that there is no private right of action under [12 U.S.C. § 2609]."). [13]

Neither 12 C.F.R. §§ 1024.17 and 1024.34 nor their authorizing regulation, 12 U.S.C. § 2609, provide a private right of action for Plaintiffs' claim for the improper administration of their escrow account. *See Collazo*, 2026 WL 1865136, at *4 (finding no private action for enforcement of the plaintiff's claim under 12 U.S.C. § 2609); *Owens*, 2026 WL 1602194, at *6 ("[T]he plaintiff asserts violations of 12 C.F.R. § 1024.17, which does not provide a private right

[13] The Court is aware of one case in which a district court within the Second Circuit found a private right of action under Section 2609. *See Heller v. First Town Mortg. Corp.*, 97-CV-8575, 1998 WL 614197, at *2–4 (S.D.N.Y. Sep. 14, 1998). Courts have since declined to follow *Heller*. *See Collazo*, 2026 WL 1865136, at *8 (collecting cases); *Ramirez v. Wells Fargo Bank, N.A.*, No. 19-CV-5074, 2021 WL 9564023, at *6 (E.D.N.Y. Mar. 24, 2021); *Papapietro v. Litton Loan Servicing, LP*, 13-CV-2433, 2020 WL 13179529, at *8 (E.D.N.Y. Mar. 31, 2020) ("[T]he majority of courts in th[e Second] Circuit to reach this issue determined no private right of action exists.") (collecting cases), *aff'd*, No. 20-1179, 2022 WL 1421404 (2d Cir. May 5, 2022) (summary order); *Dolan v. Fairbanks Cap. Corp.*, 930 F. Supp. 2d 396, 418 (E.D.N.Y. 2013) (collecting cases); *Cassese v. Washington Mut., Inc.*, No. 05-CV-2724, 2007 WL 9723132, at *6 (E.D.N.Y. Sep. 7, 2007) (collecting cases); *McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578, 591 (E.D.N.Y. 2005).

of action. That regulation is authorized by 12 U.S.C. § 2609, which provides no private right of action either."); *Manfre*, 2026 WL 807179, at *5 (finding no private action for enforcement of the plaintiff's claim under 12 U.S.C. § 2609); *Herman*, 2023 WL 6960283, at *2 (stating that "no private right of action exists under Section 2609 of RESPA or its implementing regulation, 12 C.F.R. § 1024.17"); *Dolan*, 930 F. Supp. 2d at 418 (finding no private action for enforcement of the plaintiff's claim under 12 U.S.C. § 2609).

The Court therefore grants Defendant's motion and dismisses the improper administration of escrow accounts claim under 12 U.S.C. § 2609.

**iii. Violation of force-placed insurance servicer prohibitions and failure to maintain proper policies and procedures**

Defendant argues, first, that Plaintiffs' force-placed insurance claim pursuant to 12 C.F.R. § 1024.37 fails to state a claim because (1) Plaintiffs do not allege that Defendant purchased force-placed insurance, and (2) Plaintiffs' claim is barred by the three-year statute of limitations because the escrow disbursements indicate that the most recent policy was purchased in 2018, which is approximately seven years before Plaintiffs commenced this action. (Def.'s Mem. 13–14; *see* Escrow Disbursements.) Second, Defendant argues that Plaintiffs' policy and procedures claim pursuant to 12 C.F.R. § 1024.38 fails to state a claim because the statute does not provide for a private cause of action. (*Id.* at 12.) In support, Defendant contends that 12 C.F.R. § 1024.38 does not provide a private right of action because the Consumer Financial Protection Bureau ("CFPB") "explicitly stated" that the there is no private right of action for violations of the statute. (*Id.* at 14.)

Plaintiffs do not provide any argument in support of these claims.

**1. Force-placed insurance**

Under RESPA, "a servicer of a federally related mortgage shall not obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance." 12 U.S.C § 2605(k)(1)(A); *Renois v. WVMF Funding, LLC*, No. 20-CV-9281, 2024 WL 1313492, at *9 (S.D.N.Y. Mar. 27, 2024) (quoting *id.*); *see generally* 12 C.F.R. § 1024.37. RESPA defines "force-placed insurance" as "hazard insurance coverage obtained by a servicer of a federally related mortgage when the borrower has failed to maintain or renew hazard insurance on such property as required of the borrower under the terms of the mortgage." 12 U.S.C § 2605(k)(2). "A servicer of a federally related mortgage shall not be construed as having a reasonable basis for obtaining force-placed insurance" if a borrower provides "any reasonable form of written confirmation from a borrower of existing insurance coverage." 12 U.S.C. § 2605(l)(2); *Renois*, 2024 WL 1313492, at *9 (quoting *id.*). Upon receipt of a borrower's written confirmation of existing insurance coverage, a servicer shall "terminate the force-placed insurance" and refund to the borrower "all force-placed insurance premiums paid by the borrower during any period during which the borrower's insurance coverage and the force-placed insurance coverage were each in effect," as well as any related fees. 12 U.S.C. § 2605(l)(3); *Renois*, 2024 WL 1313492, at *9 (quoting *id.*).

The Court dismisses Plaintiffs' force-placed insurance claim because Plaintiffs do not sufficiently allege that Defendant purchased force-placed insurance or any resulting damages. *See Hines v. HSBC Bank USA*, No. 15-CV-3082, 2016 WL 5716749, at *12 (E.D.N.Y. Sep. 30, 2016) (finding that the plaintiff failed to state a force-placed insurance claim where she "merely state[d] that she seeks 'statutory damages' and 'actual damages' for her RESPA claim, but

provides no factual allegations or support for these damages"); *cf. Renois*, 2024 WL 1313492, at *9 (finding that the plaintiff stated a force-placed insurance claim where she "repeatedly provided [the d]efendants with written notice and proof . . . that she maintained hazard insurance"). Plaintiffs do not allege in the Complaint when Defendant purchased force-placed insurance, when Defendant failed to comply with RESPA, or any resulting damages from Defendant's failure to comply with RESPA. Instead, the only mention of hazard insurance is in the Escrow Disbursements exhibit attached to the Complaint by Plaintiffs, listing "[h]azzard insurance advancement[s]" — which the Court construes as a hazard insurance charge — but does not otherwise provide any information regarding such an advancement. (*See* Escrow Disbursements.) Because Plaintiffs fail to show that Defendant purchased force-placed insurance or any resulting damages, they do not sufficiently state a RESPA claim with regard to these allegations. *See Hill v. DLJ Mortg. Cap., Inc.*, No. 15-CV-3083, 2016 WL 5818540, at *10 (E.D.N.Y. Oct. 5, 2016) (dismissing the plaintiff's force-placed insurance claim because the allegations were conclusory), *aff'd*, 689 F. App'x 97 (2d Cir. 2017); *Hines*, 2016 WL 5716749, at *12 ("[The plaintiff] does not sufficiently allege how [the] defendants['] failure to comply with RESPA's requirements for force-placed insurance proximately caused her damages, so she has failed to state a claim under section 2605.").

Moreover, even if Plaintiffs had sufficiently alleged a force-placed insurance claim, the claim would be barred by the three-year statute of limitations because the most recent "[h]azzard insurance advancement" was on January 14, 2019, (*see* Escrow Disbursements), which is approximately seven years before Plaintiffs commenced this action. *See Owens*, 2026 WL 1602194, at *7–8 (concluding that the plaintiff's force-placed insurance claim was barred by the statute of limitations because the hazard insurance charge "was incurred more than three years

before the plaintiff filed suit"); *Harroo-Lavine v. PHH Mortg. Corp.*, No. 25-CV-1235, 2026 WL 873012, at *4 (E.D.N.Y. Mar. 30, 2026) (concluding that the plaintiff's force-placed insurance claim was barred by the statute of limitations because the hazard insurance charge was incurred more than three years before the plaintiff filed suit).

**2. Policies and procedures claim**

Regulation X of 12 C.F.R. § 1024, which is one of RESPA's implementing regulations,[14] provides general servicing policies, procedures, and requirements under RESPA. 12 C.F.R. § 1024.38; *see In re Ditech Holding Corp.* (*In re Ditech Holding Corp. I*), No. 19-BR-10412, 2025 WL 758908, at *10 (Bankr. S.D.N.Y. Mar. 8, 2025) (stating that 12 C.F.R § 1024.38 "provides general servicing policies, procedures, and requirements including facilitating transfer of information during servicing transfers"). "A servicer shall maintain policies and procedures that are reasonably designed to achieve the objectives" provided in 12 C.F.R. § 1024.38(b). 12 C.F.R. § 1024.38(a); *see Mohamed v. Nationstar Mortg., LLC*, No. 20-CV-216, 2024 WL 4132351, at *6 (E.D.N.Y. Sep. 10, 2024) (quoting 12 C.F.R. §§ 1024.38(a)–(b)). In addition, RESPA requires a servicer to "retain records that document actions taken with respect to a borrower's mortgage loan account" and maintain certain documents and data on a mortgage loan "in a manner that facilitates compiling such documents and data into a servicing file within five days." 12 C.F.R. § 1024.38(c).

---

[14] "Regulation X 'allows borrowers to notify mortgage servicers of possible account errors'" and "requires servicers to respond to 'any written notice from the borrower that asserts an error and that includes . . . information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.'" *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376, 379 (2d Cir. 2022) (alteration in original) (first quoting *Finster v. U.S. Bank Nat'l Ass'n*, 723 F. App'x 877, 878 (11th Cir. 2018); and then quoting 12 C.F.R. § 1024.35(a)).

There is no private right of action under Regulation X. *See* 12 C.F.R. § 1024.38; *Owens*, 2026 WL 1602194, at *6; *Manfre*, 2026 WL 807179, at *7 ("[T]here is no private right of action under 12 C.F.R. § 1024.38. Regulation X provides that 'borrowers do not . . . have a private right of action under the [Consumer Financial Protection Bureau's] rules to enforce the requirements set forth in § 1024.38.'" (second and third alterations in original) (quoting 78 Fed. Reg. at 10817–18)); *In re Ditech Holding Corp. I*, 2025 WL 758908, at *10 (collecting cases); *Mohamed*, 2024 WL 4132351, at *6 ("Regulation X itself explains that 'borrowers do not . . . have a private right of action under the [Consumer Financial Protection Bureau]'s rules to enforce the requirements set forth in § 1024.38.'" (first alteration in original) (quoting same)); *Ramirez v. Wells Fargo Bank, N.A.*, No. 19-CV-5074, 2021 WL 9564023, at *6 (E.D.N.Y. Mar. 24, 2021) ("The CFPB has explicitly stated that 'borrowers do not . . . have a private right of action to enforce the requirements set forth in § 1024.38 . . . .'" (alterations in original) (quoting 78 Fed. Reg. at 10,818)).

Accordingly, Regulation X does not provide a private right of action, and the Court therefore grants Defendant's motion and dismisses the policies and procedures claim. *See Owens*, 2026 WL 1602194, at *6; *Manfre*, 2026 WL 807179, at *7; *In re Ditech Holding Corp. I*, 2025 WL 758908, at *10 ("Even if [the c]laimants had alleged a RESPA violation, [the c]laimants do not have right of action under section 1024.38.") (collecting cases); *Mohamed*, 2024 WL 4132351, at *6 (finding no private action for enforcement of the plaintiff's claim under 12 C.F.R. 1024.38); *Ramirez*, 2021 WL 9564023, at *6 (same).

The Court therefore grants Defendants' motion and dismisses all of Plaintiffs' RESPA claims arising from: (1) the "request for information" QWR, because Plaintiffs fail to plead (i) a "notice of error" QWR and (ii) actual or statutory damages; (2) the improper administration of

escrow accounts, because there is no private cause of action; (3) the violation of force-placed insurance servicer prohibitions, because (i) Plaintiffs fail to plead that Defendant purchased force-placed insurance or any resulting damages and (ii) this claim is barred by the three-year statute of limitations; and (4) failure to maintain proper policies and procedures, because there is no private cause of action.

**c. TILA claims**

Plaintiffs allege two TILA claims. First, that Defendant failed to adhere to the required servicing practices regarding suspense accounts pursuant to 15 U.S.C. § 1639(f) and 12 C.F.R. § 1026.36 because Defendant "improperly retained funds in a suspense or unapplied funds account" and failed to "apply suspense funds in a timely manner result[ing] in increased interest and other fees charged to Plaintiffs' account." (Compl. ¶¶ 122–29.) Second, that Defendant charged dual compensation charges prohibited by 12 C.F.R. § 1026.36 because their loan account "was repetitively charged duplicative fees, including items and services that were already paid for and/or charged to other people."[15] (*Id.* ¶¶ 130–33.)

---

[15] In their opposition, Plaintiffs argue for the first time that Defendant (1) violated TILA by failing to provide them with a new disclosure statement in connection with a 2011 loan modification, and (2) violated the Home Ownership and Equity Protection Act ("HOEPA") by charging prohibited fees, (Pls.' Opp'n 16–17), which Defendant argues is an impermissible modification of the Complaint, (Def.'s Reply 6). The Court declines to evaluate Plaintiffs' arguments regarding the 2011 loan modification or HOEPA because Plaintiffs did not plead any facts regarding the 2011 loan modification or HOEPA in the Complaint, and Plaintiffs may not use their opposition to amend the Complaint. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 107 (2d Cir. 2021) ("A district court therefore 'errs when it . . . relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.'" (quoting *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000))); *Leshchenko v. Go N.Y. Tours, Inc.*, No. 24-CV-8790, 2025 WL 1795883, at *5 n.5 (S.D.N.Y. June 30, 2025) ("[A] party may not use his or her opposition to a dispositive motion as a means to amend the complaint." (quoting *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007))); *United Specialty Ins. Co. v. LIC Contracting, Inc.*, No. 17-CV-5736, 2024 WL 2815977, at *5 (E.D.N.Y. June 2, 2024) ("Factual allegations contained in legal briefs or memoranda are . . . treated as matters outside the pleading for purposes of Rule 12(b)" and "[s]uch allegations 'cannot, as a matter of law, cure the deficiencies in [a complaint].'" (first alteration in original) (first quoting *Fonte v.*

TILA, which is implemented by Regulation Z, was enacted in 1968 to "protect consumers against inaccurate and unfair credit billing and credit card practices and promote the informed use of credit by assuring a meaningful disclosure of credit terms." *Strubel v. Comenity Bank*, 842 F.3d 181, 186 (2d Cir. 2016) (quoting *Vincent v. The Money Store*, 736 F.3d 88, 105 (2d Cir. 2013)); *Feeman v. Bridge It, Inc.*, 826 F. Supp. 3d 505, 514 (S.D.N.Y. 2026) (quoting *id.*), *appeal docketed*, No. 26-959 (2d Cir. filed Apr. 14, 2026); *Vincent*, 736 F.3d at 105 ("TILA seeks to 'protect . . . consumer[s] against inaccurate and unfair credit billing and credit card practices' and promote 'the informed use of credit' by 'assur[ing] a meaningful disclosure' of credit terms." (alterations in original) (quoting 15 U.S.C. § 1601(a))). TILA, as codified at 15 U.S.C. § 1640(a), "affords consumers a cause of action for damages — including statutory damages, against a creditor who fails to comply with certain enumerated statutory provisions." *Strubel*, 842 F.3d at 186.

---

*Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988); and then quoting *Concepcion v. City of New York*, No. 05-CV-8501, 2008 WL 2020363, at *10 (S.D.N.Y. May 7, 2008))); *Germain v. Nielsen Consumer LLC*, 655 F. Supp. 3d 164, 184 n.6 (S.D.N.Y. 2023) ("One cannot amend a pleading through an opposition."); *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 19-CV-1861, 2021 WL 960394, at *11 (E.D.N.Y. Mar. 15, 2021) ("[The p]laintiff may not amend the [c]omplaint through its moving papers."), *aff'd*, No. 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022) (summary order); *see also Jones v. New Penn Fin., LLC*, No. 19-CV-1493, 2020 WL 8771252, at *5 (E.D.N.Y. Nov. 13, 2020) (concluding that the plaintiff's attached declaration to her opposition stating that the defendant "began servicing her loan after it went into default in 2007" was not properly before the court because the plaintiff "may not seek to amend the [c]omplaint through submission of a [d]eclaration"), *report and recommendation adopted*, 2021 WL 405888 (E.D.N.Y. Feb. 5, 2021).

Moreover, even if the Court could consider Plaintiffs' arguments regarding the 2011 loan modification or HOEPA, the claims would be time barred under TILA's one-year statute of limitations, to the extent that Plaintiffs' claims arise from the loan modification in 2011 or HOEPA, which occurred over a decade before Plaintiffs filed this action.

As relevant here,[16] TILA imposes additional requirements on servicers regarding the management of a consumer loan. First, TILA imposes requirements on servicers regarding suspense accounts where the relevant statute prohibits servicers from "fail[ing] to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative

---

[16] In addition to TILA's requirements regarding compensation for a loan transaction and the management of a loan, TILA "impos[es] mandatory disclosure requirements on those who extend credit to consumers in the American market," *Strubel v. Comenity Bank*, 842 F.3d 181, 186 (2d Cir. 2016), when "originating the loan," *United States v. Moseley*, 980 F.3d 9, 16 (2d Cir. 2020). "Together with its implementing Regulation Z, and under specified circumstances, TILA requires disclosure by the 'creditor' of, *inter alia*, the 'amount financed,' the 'finance charge,' and the 'number, amount, and due dates or period of payments scheduled to repay the total of payments,' as well as rescission rights." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 491 (2d Cir. 2014) (first quoting 15 U.S.C. § 1638(a); then citing 15 U.S.C. § 1635; and then citing 12 C.F.R. § 226.23(b)(1)); *see also Hussein v. Consol. Edison, Inc.*, No. 25-1996, 2026 WL 1256304, at *2 (2d Cir. May 7, 2026) ("TILA 'impos[es] mandatory disclosure requirements on those who extend credit to consumers in the American market.'" (alteration in original) (quoting *Strubel*, 842 F.3d at 186)). "In order to be considered a finance charge, a charge must be incident to, or a condition of, the extension of credit." *Pechinski v. Astoria Fed. Sav. & Loan Ass'n*, 345 F.3d 78, 80 (2d Cir. 2003) (citing 15 U.S.C. § 1605(a)); *see Poulin v. Balise Auto Sales, Inc.*, 647 F.3d 36, 39 (2d Cir. 2011) ("Based on the language of 15 U.S.C. § 1605(a), Regulation Z, and the official staff interpretation, courts have concluded that a creditor is obligated under § 1638(a)(3) to disclose as a finance charge any costs charged to customers buying on credit, but not charged to customers buying with cash, in comparable transactions."). The statute "imposes general liability only on creditors and greatly circumscribes the liability of assignees." *Vincent v. The Money Store*, 736 F.3d 88, 105 (2d Cir. 2013) (citing 15 U.S.C. §§ 1640(a), 1641(e)). An assignee is liable for a TILA violation "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a); *Vincent*, 736 F.3d at 107. "[A] violation apparent on the face of the disclosure statement includes, but is not limited to . . . a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned . . . ." 15 U.S.C. § 1641(a); *see also Vincent*, 736 F.3d at 107–08 (citing the Senate Banking, Housing, and Urban Affairs Committee's explanation that Section 1641 "provides that violations are apparent on the face of a disclosure statement when disclosures are inaccurate or incomplete based on the statement or other documents involved, and where incorrect terminology is utilized"). While the TILA disclosure requirements would apply to the 2011 loan modification, as discussed *supra* footnote 15, because Plaintiffs did not plead facts regarding the 2011 loan modification in the Complaint, the Court declines to consider the disclosure requirements under TILA.

information to a consumer reporting agency, or except as provided in [Section 1026.36(c)(1)(iii)]." 12 C.F.R. § 1026.36(c)(1)(i); *In re Ditech Holding Corp.* (*In re Ditech Holding Corp. II*), No. 19-BR-10412, 2025 WL 664849, at *10 (Bankr. S.D.N.Y. Dec. 28, 2025) ("[S]ervicers must credit periodic payments to the account as of the date of receipt, except when a delay in crediting does not result in a finance or other charge." (citing *id.*)); *In re Ditech Holding Corp.* (*In re Ditech Holding Corp. III*), No. 19-BR-10412, 2024 WL 3249957, at *8 (Bankr. S.D.N.Y. June 28, 2024) (quoting same).

Second, TILA prohibits a "loan originator" that "receives compensation directly from a consumer in a consumer credit transaction secured by a dwelling" from "receiv[ing] compensation, directly or indirectly, from any person other than the consumer in connection with the transaction." 12 C.F.R. § 1026.36(d)(2)(i)(A)(1); *see Johnson v. Loandepot.com, LLC*, No. 25-CV-2294, 2026 WL 2279303, at *1 (D. Md. Aug. 7, 2026) (stating that TILA prohibits compensation of loan originators[] based on any transaction term, profitability of a loan, or any proxy for same" (citing 12 C.F.R § 1026.36(d)(1))); *Union Home Mortg. Corp. v. Ballew*, No. 25-CV-318, 2026 WL 2261367, at *2 (N.D. Ohio Aug. 6, 2026) (explaining the defendant's argument that 12 C.F.R. Section 1026.36(d)–(e) "prohibit[s] steering clients toward more profitable loan products and compensating loan officers based on the terms of their transactions" (citing 12 C.F.R §§ 1026.36(d)–(e))); *Manfre*, 2026 WL 807179, at *9 ("12 C.F.R. § 1026.36(d)(2)(i) prohibits a 'loan originator' that 'receives compensation directly from a consumer in a consumer credit transaction secured by a dwelling' from 'receiv[ing] compensation, directly or indirectly, from any person other than the consumer in connection with the transaction.'" (alteration in original) (quoting 12 C.F.R. § 1026.36(d)(2)(i)(A)(1))).

**i. Plaintiffs' TILA claims are time-barred, and equitable tolling does not apply**

Defendant argues that Plaintiffs' TILA claims are barred by the one-year statute of limitations, and equitable tolling is inapplicable. (Def.'s Mem. 14–15.)

Plaintiffs argue that their TILA claim is not barred because equitable tolling applies. In support, Plaintiffs contend that equitable tolling applies because "[Defendant] actively impeded [ ] Plaintiffs' ability to discover the full scope of the violations related to improper fees and charges." (Pls.' Opp'n 15.)

**1. Statute of limitations**

A private right of action under TILA arises on the date a violation of that statute occurs, and a claim for damages must be brought within one year from the occurrence of the violation. 15 U.S.C. § 1640(e); *see Smith v. Nassi*, No. 21-2748, 2022 WL 11555269, at *1 (2d Cir. Oct. 20, 2022) (summary order) ("TILA claims based on private actions must be brought 'within one year from the date of the occurrence of the violation.'" (quoting *id.*)); *Dae Hyuk Kwon v. Santander Consumer USA*, 742 F. App'x 537, 540 (2d Cir. 2018) (quoting same); *Latouche v. Wells Fargo Home Mortg., Inc.*, 752 F. App'x 11, 12–13 (2d Cir. 2018) (quoting same); *Owens*, 2026 WL 1602194, at *8 (quoting same); *Harroo-Lavine*, 2026 WL 873012, at *5 ("[A] suit for damages under TILA, in connection with a mortgage loan, may not be brought more than one year after entering into that loan." (alteration in original) (quoting *Latouche*, 752 F. App'x at 12)); *Manfre*, 2026 WL 807179, at *8 (quoting 15 U.S.C. § 1640(e)); *see also Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 285 (S.D.N.Y. 2011) (collecting cases).

For a mortgage loan, the date of the occurrence is when the plaintiff enters into the loan agreement or when the defendant transmits the funds. *See Latouche*, 752 F. App'x at 13 ("[A] suit for damages under TILA, in connection with a mortgage loan, may not be brought more than

one year after entering into that loan." (citing *Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 392 (E.D.N.Y. 2014))); *Harper v. Bank of N.Y.*, No. 25-CV-1573, 2026 WL 1174506, at *21 (E.D.N.Y. Apr. 30, 2026) ("It is well-settled law that in closed-end credit transactions [such as mortgages] . . . the date of the occurrence of violation is no later than the date the plaintiff enters the loan agreement or, possibly, when [the] defendant performs by transmitting the funds to [the] plaintiffs." (first and second alterations in original) (quoting *Cardiello v. The Money Store, Inc.*, No. 00-CV-7332, 2001 WL 604007, at *3 (S.D.N.Y. June 1, 2001), *aff'd*, 29 F. App'x 780 (2d Cir. 2002))); *Arroyo v. PHH Mortg. Corp.*, No. 13-CV-2335, 2014 WL 2048384, at *12 (E.D.N.Y. May 19, 2014) ("[C]ourts have made abundantly clear that the [one-year TILA] statute of limitations runs from the time of the occurrence, not the time of discovery."); *Johnson v. Scala*, No. 05-CV-5529, 2007 WL 2852758, at *3 (S.D.N.Y. Oct. 1, 2007) ("[T]he statute of limitations for TILA claims does not start running upon the discovery of the non-disclosure, but, rather, *upon the funding of the loan*." (emphasis added)).

The Court finds that Plaintiffs' TILA claims are time barred because their claims were not brought within the one-year statute of limitations. Plaintiffs filed the Complaint on April 15, 2025, therefore, any claims based on conduct occurring before April 15, 2024 are barred by the one-year statute of limitations. Based on the allegations in the Complaint, Plaintiffs' first TILA claim, which alleges that Defendant violated TILA by failing to "apply suspense funds in a timely manner," (Compl. ¶ 128), was not timely filed. Plaintiffs do not allege in the Complaint when Defendant failed to apply suspense funds: the only mention of suspense funds is in the Property Preservation Fees exhibit, listing "[s]uspense adjustment[s]" — which the Court construes as suspense funds — dated between December 3, 2018 and January 3, 2019. (*See*

Prop. Preservation Fees.) As a result, Plaintiffs' claim began accruing, at the latest, in January of 2019, which is more than six years before Plaintiffs commenced this action.

Plaintiffs' second TILA claim, which alleges that Defendant violated TILA by charging Plaintiffs' loan account duplicative fees, (Compl. ¶ 131), also appears to be barred by the statute of limitations. Plaintiffs do not allege in the Complaint when Defendant charged Plaintiffs' loan account duplicative fees, and Plaintiffs do not otherwise provide any details. However, Plaintiffs allege that Defendant violated 12 C.F.R. § 1026.36(d)(2)(i), which "prohibits dual compensation payments in connection with a loan *transaction*." (*Id.* (emphasis added).) Therefore, the provision prohibits dual compensation "in connection with a *transaction*," 12 C.F.R. § 1026.36(d)(2)(i)(C) (emphasis added), and based on these allegations, the Court construes Plaintiffs' claim to be based on the purchase of the Property, which was in July of 2006. (*Id.* ¶ 8.) Plaintiffs filed this action in April of 2025, over eighteen years after purchasing the Property in July of 2006, and any possible TILA violation for dual compensation is barred by the one-year limitations period. *See Latouche*, 752 F. App'x at 13 ("[The plaintiff] entered into the original loan agreement in 2002 and subsequently entered into the loan modification agreement in 2009. She did not assert her TILA claim until 2016, many years after the one-year limitations period had expired."); *Owens*, 2026 WL 1602194, at *8 (concluding that the plaintiff's TILA claim was barred by the statute of limitations because the loan modification occurred more than five years before the plaintiff filed suit); *Harroo-Lavine*, 2026 WL 873012, at *5 (concluding that the plaintiff's TILA claim was barred by the statute of limitations because the loan modification occurred more than ten years before the plaintiff filed suit); *Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 296 (E.D.N.Y. 2024) (adopting report and recommendation) (concluding that the plaintiff's TILA claims were time-barred when the loan modification occurred in 2011);

*see also Arroyo*, 2014 WL 2048384, at *12 ("[C]ourts have made abundantly clear that the statute of limitations [for TILA claims] runs from the time of the occurrence, not the time of discovery.").

**2. Equitable tolling**

The doctrine of equitable tolling "allows a district court to toll the statute of limitations." *Polanco v. U.S. Drug Enf't Admin.*, 158 F.3d 647, 655 (2d Cir. 1998); *see also Doe v. United States*, 76 F.4th 64, 71 (2d Cir. 2023) ("Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." (quoting *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000))). For equitable tolling to apply, a litigant must demonstrate "[1] that some extraordinary circumstance stood in her way and [2] that she has been pursuing her rights diligently." *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 142 (2d Cir. 2025) (internal quotation marks omitted) (quoting *Doe*, 76 F.4th at 71), *cert. denied*, 146 S. Ct. 1501 (2026); *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." (quoting *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015))); *see also Doe*, 76 F.4th at 71 (noting that a party seeking equitable tolling "must demonstrate . . . that some extraordinary circumstance stood in [her] way and . . . that [she] has been pursuing [her] rights diligently." (alterations in original) (internal quotation marks omitted)); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (noting that a showing of reasonable diligence throughout the period a plaintiff seeks to toll and that some extraordinary circumstance prevented a plaintiff from filing his action in a timely manner are prerequisites for equitable tolling); *Polanco*, 158 F.3d at 655 ("To avail himself of this doctrine, the plaintiff must show that he 'pass[ed] with

reasonable diligence through the period [he] seeks to have tolled.'" (alterations in original) (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996))).

"Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Watson*, 865 F.3d at 133 (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007)); *see McPartlan-Hurson v. Westchester Cmty. Coll.*, 804 F. App'x 41, 43–44 (2d Cir. 2020) (rejecting the party's late filing because equitable tolling of exhaustion time applies only "in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights" (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003))); *Berrios v. Henri*, No. 18-CV-4194, 2021 WL 6197052, at *3 (E.D.N.Y. Dec. 30, 2021) (quoting same).

Courts will equitably toll statutes of limitations for fraudulent concealment if: "(1) the defendant concealed the existence of the cause of action from the plaintiff; (2) the concealment prevented [the] plaintiff's discovery of the claim within the limitations period; and (3) [the] plaintiff's ignorance of the claim did not result from a lack of diligence." *Saint-Jean*, 129 F.4th at 143 (citing *New York v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988)); *Fromageot v. Britt*, No. 21-CV-1165, 2025 WL 3470473, at *8 (D. Conn. Dec. 3, 2025) (quoting *id.*), *appeal dismissed*, No. 26-26 (2d Cir. June 18, 2026); *see Koch*, 699 F.3d at 157 (stating that a plaintiff must show: "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled" (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999))). "A plaintiff can prove concealment by showing 'either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim

or injury or that the wrong itself was of such a nature as to be self-concealing.'" *Saint-Jean*, 129 F.4th at 143 (quoting *Hendrickson Bros.*, 840 F.2d at 1083); *see SL-x IP S.à.r.l. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 21-2697, 2023 WL 2620041, at *3 (2d Cir. Mar. 24, 2023) (summary order) (quoting same); *In re Google Digit. Advert. Antitrust Litig.*, 721 F. Supp. 3d 230, 271 (S.D.N.Y. 2024) (quoting same). Rule 9(b) of the Federal Rules of Civil Procedure requires that a party alleging fraud or fraudulent concealment "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Spencer v. Lab'y Corp. of Am. Holdings*, No. 19-CV-4927, 2024 WL 3675855, at *15 (E.D.N.Y. Aug. 6, 2024) ("A claim of fraudulent concealment must be pled with particularity, in accordance with the heightened pleading standards of Fed. R. Civ. P. 9(b)." (quoting *Hinds Cty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 520 (S.D.N.Y. 2009))), *aff'd*, No. 24-2363, 2025 WL 2779015 (2d Cir. Sep. 30, 2025) (summary order). "Generalized or conclusory allegations of fraudulent concealment are insufficient to toll a statute of limitations." *Singh v. Wells*, 445 F. App'x 373, 378 (2d Cir. 2011) (citing *Armstrong v. McAlpin*, 699 F.2d 79, 90 (2d Cir. 1983)). The "[Second] Circuit has explicitly clarified that 'fraudulent concealment is not essential to equitable tolling,'" meaning, the application of the doctrine of equitable tolling is not limited to causes of fraudulent concealment.[17] *Saint-Jean*, 129 F.4th at 143 (quoting *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 182 (2d Cir. 2008)).

[17] The "relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action." *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 142 (2d Cir. 2025) (quoting *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004)). Plaintiffs argue that they "acted with reasonable diligence by hiring counsel and sending a detailed QWR to uncover the truth as soon as the scale of the unexplained debt became apparent." (Pls.' Opp'n 16.) As discussed *supra* Section II.c.i.1, Plaintiffs' TILA claims began accruing, at the latest, in January of 2019, which is the last listed "[s]uspense adjustment," (*see* Prop. Preservation Fees), and Plaintiffs submitted the "request for information" QWR in April of 2024. Plaintiffs'

Plaintiffs fail to show that the doctrine of equitable estoppel should apply to their TILA claims. Plaintiffs fail to allege any fraudulent concealment in the Complaint,[18] and they fail to show that they exercised diligence in pursuing their claims. *See Edwards v. McMillen Cap., LLC*, No. 21-CV-1024, 2022 WL 16984534, at *2 (2d Cir. 2022) (summary order) ("[The plaintiff] does not allege any 'extraordinary circumstances' warranting equitable tolling, and reasonable diligence by [the plaintiff] would have revealed the alleged violation when he signed the mortgage note in April [of] 2012."); *Smith*, 2022 WL 11555269, at *1 ("[A]n independent review of the record reveals no 'reasonable diligence' by [the plaintiff] in pursuing her TILA claim or 'extraordinary circumstances' that would warrant equitable tolling."); *Macias v. Ocwen Loan Servicing, LLC*, 718 F. App'x 32, 35 (2d Cir. 2017) ("[The appellant's] attempt to invoke equitable tolling [of the TILA limitations period] is unavailing because he pleads in only a conclusory fashion that appellees prevented him from discovering the alleged violation."); *Harroo-Lavine*, 2026 WL 873012, at *5 ("[Given the p]laintiffs' unsupported, conclusory allegations that they 'pursu[ed] [their] rights diligently' and were the victims of 'fraudulent concealment,' [the p]laintiffs fail to plausibly allege some 'extraordinary circumstances' that would entitle them to equitable tolling." (second and third alterations in original)); *Manfre*, 2026

argument that they exercised reasonable diligence is therefore not supported by the allegations in the Complaint because they submitted the "request for information" QWR after the statute of limitations period expired, without any explanation as to the reason for the delay.

[18] Plaintiffs first mention fraudulent concealment in their opposition to Defendant's motion. In support, Plaintiffs argue that Defendant concealed "the full scope of the violations related to improper fees and charges" by "providing a QWR response with a massive, targeted omission, the six-year gap from 2006 to 2012." (Pls.' Opp'n 15.) Plaintiffs' argument is insufficient to support a TILA claim because they do not allege how the "request for information" QWR response was a "massive, targeted omission," or how Defendant acted with fraud. In addition, Plaintiffs admit that they did not request a "request for information" QWR until April of 2024, (Compl. ¶ 14), sixteen years after the expiration of the one-year statute of limitations with regard to the origination of the loan.

WL 807179, at *8 ("To survive a motion to dismiss an otherwise untimely TILA claim, the pleading must first allege, with specificity, 'efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent . . . the plaintiff from suing in time.'" (alteration in original) (quoting *Latouche v. Well[s] Fargo Home Mortg. Inc.*, No. 16-CV-1175, 2017 WL 8776975, at *7 (E.D.N.Y. Aug. 25, 2017))), *report and recommendation adopted*, Order Adopting Report and Recommendations (E.D.N.Y. Nov. 9, 2017), *aff'd sub nom. Latouche v. Wells Fargo Home Mortg. Inc.*, 752 F. App'x 11 (2d Cir. 2018))); *Papapietro*, 2014 WL 5824682, at *8 ("In TILA and RESPA cases, courts in th[e Second] Circuit 'have held uniformly that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations.'" (quoting *Deswal v. U.S. Nat. Ass'n*, No. 13-CV-3354, 2014 WL 1932589, at *2 (E.D.N.Y. May 14, 2014), *aff'd*, 603 F. App'x 22 (2d Cir. 2015))); *see also Marion v. Transitowne Jeep Chrysler Dodge Ram Williamsville*, No. 23-CV-294, 2026 WL 864006, at *2 (W.D.N.Y. Mar. 30, 2026) (concluding that for equitable tolling to apply "[the] defendant [must have] fraudulently concealed *from the plaintiff* his cause of action *during the time in which [the] plaintiff could have brought that action*" (second alteration in original) (quoting *Cardiello*, 2001 WL 604007, at *4)), *appeal docketed*, No. 26-1155 (2d Cir. filed Apr. 29, 2026).

The Court therefore finds that Plaintiffs' TILA claims are time-barred and equitable tolling does not apply.[19]

**ii. Plaintiffs fail to allege a TILA claim**

Defendant argues, first, that the Court should dismiss Plaintiffs' claim because Plaintiffs fail to adhere to TILA's required servicing practices by not stating a "single monthly payment

---

[19] Although the Court finds that Plaintiffs' TILA claims are time barred, the Court nevertheless addresses the merits of Plaintiffs' claims.

that [Defendant] failed to timely apply to the Mortgage" or alleging that "any delay caused [Plaintiffs] to incur a charge or reporting of the Mortgage [ ] to a credit reporting agency." (Def.'s Mem. 16.) Second, Defendant argues that Plaintiffs do not sufficiently allege a TILA violation pursuant to 12 C.F.R. § 1026.36(c) because they do not (1) "identify any payments that [Defendant] retained in a suspense account" or (2) "allege that [Defendant] failed to notify them about the retention of funds in a suspense account o[r] failed to apply funds to cover a monthly payment." (*Id.* at 16–17.) Third, Defendant argues that the Court should dismiss Plaintiffs' claim for prohibited dual compensation charges because: (1) Plaintiffs do not have a basis to allege that Defendant was a loan originator that received dual compensation, as Defendant "could not have acted as a loan originator approximately seven years after the Mortgage [ ] closed"; and (2) TILA went into effect in January of 2014, which is after the Mortgage closed. (*Id.* at 18.)

Plaintiffs argue, first, that they have plausibly alleged a TILA violation. In support, Plaintiffs contend that "[Defendant]'s predecessor, and by extension, [Defendant] as assignee" violated TILA by "failing to provide new, clear, and conspicuous TILA disclosures" related to the Mortgage's refinancing in 2011.[20] (Pls.' Opp'n 16–17.) Second, Plaintiffs argue that they have plausibly alleged a prohibited dual compensation charge because "at least $95,613.95 in unexplained fees were charged to the account prior to 2012" and "[c]apitalizing tens of thousands of dollars in fees as a condition of the modification is functionally equivalent to charging such a prohibited fee." (*Id.* at 17.)

[20] As discussed *supra* footnote 15, the Court does not consider Plaintiffs' arguments regarding the 2011 loan modification or HOEPA because Plaintiffs did not plead any facts regarding the 2011 loan modification or HOEPA in the Complaint.

First, Plaintiffs fail to allege a suspense account violation because they do not allege facts to support that Defendant "improperly retained funds in a suspense or unapplied funds account," (Compl. ¶ 127). Plaintiffs do not (1) state that Defendant delayed or missed a payment or (2) identify any payments retained in a suspense account. Instead, Plaintiffs provide a list of "[p]roperty [p]reservation [f]ees," which includes "[s]uspense adjustment[s]."[21] (*See* Prop. Preservation Fees.) However, Plaintiffs do not allege any specific missed payments or specify any facts regarding the improper retention of suspense account funds, which is insufficient to state a claim under TILA. *See Manfre*, 2026 WL 807179, at *10 ("[T]he plaintiff does not provide any factual support for [the 12 C.F.R. § 1026.36(c)(1)] claim. He does not allege that he ever made partial payments, specify when his payments were not timely applied to his loan, or state the amount of money that was not properly credited."); *Bocci*, 2024 WL 3813756, at *13 ("[The p]laintiff does not plead factual allegations specific to TILA that would permit the [c]ourt to infer that [the d]efendants are liable under the statute. [The p]laintiff simply asserts that [the d]efendants are in violation of TILA or engaged in 'deception[.]' Such conclusory statements fail to state a claim under TILA." (sixth alteration in original)); *Estes v. Toyota Fin. Serv.*, No. 14-CV-1300, 2015 WL 3830350, at *6 (E.D.N.Y. June 22, 2015) (dismissing TILA claim because the plaintiff's "conclusory statement that [the] defendant failed to provide her with sufficient disclosure d[id] not state a plausible claim under the TILA").

[21] As discussed *supra* footnote 5, Plaintiffs attached a list of "[s]uspense adjustment[s]" dated between December of 2018 and January of 2019, but they do not provide any additional information regarding these "adjustments," including (1) whether any partial payments were made, (2) whether any payments were not timely applied to their loan, or (3) whether any amount was improperly credited to a suspense account. (*See* Prop. Preservation Fees.) *See Manfre*, 2026 WL 807179, at *10 (concluding that the plaintiff failed to allege a suspense account violation where he did not "allege that he ever made partial payments, specify when his payments were not timely applied to his loan, or state the amount of money that was not properly credited").

Second, Plaintiffs fail to allege a dual compensation violation because they do not allege facts showing any duplicative fees or any recipients of duplicative fees.[22] Instead, Plaintiffs state that the alleged duplicative fees were charged for "items and services that were already paid for and/or charged to other people." (Compl. ¶ 132.) Plaintiffs provide a list of "[l]ender [p]aid [e]xpenses," which lists amounts allegedly incurred from 2018 to 2019 without any discussion regarding which of these expenses were duplicative, which is insufficient to state a claim under TILA. (*See* Lender Paid Expenses.) *See Manfre*, 2026 WL 807179, at *9 ("The complaint does not plead any facts suggesting who might have paid the allegedly duplicative fees; it merely asserts that the fees were 'already paid by and/or charged to other persons.' This 'formulaic recitation of the elements of a cause of action' is insufficient to state a claim." (internal citation omitted) (quoting *Twombly*, 550 U.S. at 555)).

The Court therefore grants Defendant's motion and dismisses Plaintiffs' TILA claims because the claims are barred by the statute of limitations, and Plaintiffs otherwise fail to state a claim under TILA.

**d. FDCPA claims**

Plaintiffs allege three FDCPA claims regarding: (1) the collection of prohibited fees pursuant to 15 U.S.C. § 1692(f) and its implementing regulation, 12 C.F.R. § 1006.22, (Compl. ¶¶ 139–47); (2) the use of false deceptive, or misleading representations pursuant to 15 U.S.C. §§

[22] The Court does not address Defendant's argument that it is not a "loan originator" subject to TILA because Plaintiffs do not respond to this argument. Even if Defendant was a "loan originator," the Court would nevertheless dismiss Plaintiffs' dual compensation claim because Plaintiffs fail to plead facts regarding any dual compensation. *See Manfre*, 2026 WL 807179, at *9 ("The plaintiff does not address whether [the defendant] is a 'loan originator' subject to the regulation. However, [the dual compensation claim] must be dismissed even if [the defendant] is a 'loan originator,' because the plaintiff does not plead 'enough facts to state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

1692e and 1692k, (*id.* ¶¶ 148–54); and (3) the use of unfair or unconscionable means to collect a debt pursuant to 15 U.S.C. §§ 1692f and 1692k, (*id.* ¶¶ 155–60).

"The statutory purposes of the FDCPA are to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent [s]tate action to protect consumers against debt collection abuses.'" *Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 164–65 (2d Cir. 2020) (quoting 15 U.S.C. § 1692(e)); *Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 437 (2d Cir. 2018) (quoting *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016)); *Avila*, 817 F.3d at 75 (quoting 15 U.S.C. § 1692(e)); *Vincent*, 736 F.3d at 96 (quoting same); *see also Carlin v. Davidson Fink LLP*, 852 F.3d 207, 214 (2d Cir. 2017) ("We have . . . recognized that the 'FDCPA was passed to protect consumers from deceptive or harassing actions taken by debt collectors.'" (emphasis omitted) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002))). "To accomplish these goals, the FDCPA creates a private right of action for debtors who have been harmed by abusive debt collection practices." *Benzemann v. Citibank N.A.*, 806 F.3d 98, 100 (2d Cir. 2015) (citing 15 U.S.C. § 1692k); *Caro v. Network Recovery Servs., Inc.*, No. 26-CV-1617, 2026 WL 891612, at *2 (E.D.N.Y. Apr. 1, 2026) (quoting *id.*); *DeSimone v. Select Portfolio Servicing, Inc.*, 748 F. Supp. 3d 136, 157 (E.D.N.Y. 2024) (quoting same), *motion to certify appeal denied*, 786 F. Supp. 3d 509 (E.D.N.Y. 2025). "To establish a violation under the FDCPA, '(1) the plaintiff must be a consumer who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, [ ] (2) the defendant collecting the debt is considered a debt collector, and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements.'" *Zigman v. Meyers, Saxon & Cole*, No. 23-CV-8954, 2026 WL 530581, at *4–5 (E.D.N.Y. Feb. 25, 2026) (emphases

omitted) (quoting *Wilkins v. Specialized Loan Servicing, LLC*, 623 F. Supp. 3d 264, 270 (S.D.N.Y. 2022)); *Wilkins*, 623 F. Supp. 3d at 270 (quoting *Schuh v. Druckman & Sinel, L.L.P.* (*Schuh I*), 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010)); *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (quoting *Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 488 (S.D.N.Y. 2014)).

Claims under the FDCPA must be commenced "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *see also Benzemann*, 806 F.3d at 99 ("[T]he [FDCPA] statute of limitations . . . provides that FDCPA plaintiffs must file suit 'within one year from the date on which the violation occurs.'" (quoting *id.*)). A cause of action accrues under the FDCPA when "injury occurs" and "the injured party has the right to bring suit for all of the damages . . . caused by the defendant's acts." *Benzemann*, 806 F.3d at 101 (quoting *Leonhard v. United States*, 633 F.2d 599, 613 (2d Cir. 1980)); *see also Makhnevich v. Novick Edelstein Pomerantz PC*, No. 23-202, 2024 WL 2207061, at *1 (2d Cir. May 16, 2024) (summary order) ("An FDCPA violation occurs 'when an individual is injured by the alleged unlawful conduct.'" (quoting *id.*)).

The parties do not dispute Plaintiffs' status as a "consumer" pursuant to the FDCPA. The Court therefore only addresses whether Plaintiffs adequately pleaded that: (1) Defendant is a "debt collector" pursuant to the FDCPA; and (2) whether Defendant's communication is subject to the FDCPA.

**i. Plaintiffs do not sufficiently allege that Defendant is a "debt collector"**

Defendant argues that Plaintiffs fail to state an FDCPA claim because Defendant is not a "debt collector," and a "a mortgage loan servicer is not a debt collector subject to the FDCPA where the mortgage loan was not in default at the time that defendant began servicing the loan." (Def.'s Mem. 18–19.) In support, Defendant contends that it is a "creditor" as the noteholder and

holder of the Mortgage. Moreover, Defendant states that Plaintiffs do not allege that the Mortgage and Note were in default when Defendant began servicing them. (*Id.* at 19.)

Plaintiffs argue that "[Defendant's] own proffered evidence conclusively establishes its status as a debt collector under the FDCPA," and they have alleged that the loan was in default at the time of Defendant's servicing.[23] (Pls.' Opp'n 18.)

"The relevant provisions of the FDCPA apply only to the activities of a 'debt collector,'" *Schuh v. Druckman & Sinel, L.L.P.* (*Schuh II*), 602 F. Supp. 2d 454, 462 (S.D.N.Y. 2009) (citing 15 U.S.C. §§ 1692e, 1692f, 1692g), and "[a]s a general matter, creditors are not subject to the FDCPA," *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998). The statute defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due [to] another." 15 U.S.C. § 1692a(6); *see Heintz v. Jenkins*, 514 U.S. 291, 293 (1995) ("The [FDCPA's] definition of the term 'debt collector' includes a person who 'regularly collects or attempts to collect, directly or indirectly, debts owed [to] . . . another.'" (second and third alterations in original) (quoting 15 U.S.C. § 1692a(6))). However, a "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at

[23] Plaintiffs do not allege in the Complaint that the Mortgage or Note were in default when Defendant began servicing the debt, but Plaintiffs attempt to introduce this information in their opposition to Defendant's motion, which the Court declines to consider. In support, Plaintiffs rely upon documents Defendant has attached to its motion related to the underlying mortgage loan to support their FDCPA claim, including a judgment of foreclosure and a motion to vacate a judgment of foreclosure. As discussed *supra* footnote 15, the Court does not consider Plaintiffs' arguments regarding facts that were not pleaded in the Complaint. In addition, district courts ordinarily decline to "look beyond the complaint and attached documents in deciding a motion to dismiss" under Rule 12(b)(6). *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011).

the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii); *see Qurashi v. Ocwen Loan Servicing, LLC*, 760 F. App'x 66, 68 (2d Cir. 2019) ("A loan servicer acting on behalf of the owner of a debt obligation is not a debt collector unless it began its servicing duties after the loan entered default status."); *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 96 (2d Cir. 2012) (quoting 15 U.S.C. § 1692a(6)(F)(iii)); *Taylor v. Experian*, No. 24-CV-188, 2024 WL 2420542, at *2 (N.D.N.Y. May 1, 2024) ("The legislative history of the FDCPA indicates 'conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.'" (quoting *In re Residential Cap., LLC*, No. 12-BR-12020, 2015 WL 4747860, at *8 (Bankr. S.D.N.Y. Aug. 4, 2015))), *report and recommendation adopted*, 2024 WL 2399917 (N.D.N.Y. May 23, 2024). Thus, "[u]nder the FDCPA, a 'debt collector' is defined as a person either (1) involved 'in any business the principal purpose of which is the collection of any debts,' or (2) 'who regularly collects . . . debts owed . . . another.'" *Ciampa v. L. Offs. of Igor Dodin, PLLC*, 978 F. Supp. 2d 174, 176 (E.D.N.Y. 2013) (alterations in original) (quoting 15 U.S.C. § 1692a(6)); *see Rutty v. Krimko*, 789 F. App'x 916, 917 (2d Cir. 2020) (quoting same); *Qurashi*, 760 F. App'x at 68 (quoting same); *Papetti v. Does 1-25*, 691 F. App'x 24, 26 (2d Cir. 2017) (quoting same); *Cooper v. Chrysler Cap.*, No. 21-CV-6661, 2021 WL 6064345, at *2 (W.D.N.Y. Dec. 22, 2021) (quoting *Finnegan v. Manhattan Mini Storage, LLC*, No. 21-CV-7354, 2021 WL 4066637, at *1 (S.D.N.Y. Sep. 7, 2021)).

The FDCPA defines a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). Although debt collectors are subject to the FDCPA, "[a]s a general matter, creditors are not subject to the FDCPA," *Maguire*, 147 F.3d at 235, as the FDCPA "limits its reach to those collecting the dues 'of another' and does not

restrict the activities of creditors seeking to collect their own debts," *1077 Madison St. LLC v. March*, No. 14-CV-4253, 2015 WL 6455145, at *3 (E.D.N.Y. Oct. 26, 2015) (citing *Maguire*, 147 F.3d at 235); *see Qurashi*, 760 F. App'x at 68 ("With certain exceptions . . . creditors are generally not considered 'debt collectors' subject to the FDCPA."); *Cooper*, 2021 WL 6064345, at *2 ("[T]he statute does not apply to creditors who seek in their own name to collect debts owed to them . . . ." (quoting *Wang v. Verizon Commc'ns Inc.*, No. 19-CV-9506, 2021 WL 4198412, at *4 (S.D.N.Y. Sep. 15, 2021))).

In addition, "[a] creditor that is not itself a debt collector is not vicariously liable for the actions of a debt collector it has engaged to collect its debts." *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 255 (S.D.N.Y. 2008) (quoting *Doherty v. Citibank (S.D.) N.A.*, 375 F. Supp. 2d 158, 162 (E.D.N.Y. 2005)), *aff'd*, 360 F. App'x 255 (2d Cir. 2010). Where an entity is assigned "a debt in default solely for the purpose of facilitating collection of such debt for another," it falls outside the definition of a "creditor" and under the FDCPA. *Id.* at 254 n.9 (quoting *Masudi v. Ford Motor Credit Co.*, No. 07-CV-1082, 2008 WL 2944643, at *3 (E.D.N.Y. July 31, 2008)). However, even where an entity acquires a defaulted debt, it is not a debt collector if it does not engage in collection activities or where it seeks to collect on its own behalf rather than for another. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 82 (2017) (holding that "individuals and entities who regularly purchase debts originated by someone else and then seek to collect those debts for their own account" are not debt collectors); *Johnson-Gellineau v. Steine & Assocs., P.C.*, No. 16-CV-9945, 2019 WL 2647598, at *8 (S.D.N.Y. June 27, 2019) ("[E]ven where an entity acquires a defaulted debt, it is not a debt collector where it does not engage in collection activities or seek to collect on its own behalf rather than 'for another.'" (quoting *Munroe v. Specialized Loan Servicing LLC*, No. 14-CV-1883, 2016 WL 1248818, at *5

(E.D.N.Y. Mar. 28, 2016))), *aff'd*, 837 F. App'x 8 (2d Cir. 2020); *see also Izmirligil v. Bank of N.Y. Mellon*, No. 11-CV-5591, 2013 WL 1345370, at *4 (E.D.N.Y. Apr. 2, 2013) ("[The p]laintiff does not allege, nor does he argue in opposition that he can allege, that either [the bank's] 'principal purpose' is the collection of debts or that [the bank] 'regularly collects' debts owed another. Rather, [the] plaintiff alleges that [the bank] is a 'debt collector' simply 'because [the bank] took an assignment of the alleged debt while the debt was allegedly in default.'"); *Pereira v. Ocwen Loan Servicing, LLC*, No. 11-CV-2672, 2012 WL 1379340, at *3 (E.D.N.Y. Mar. 12, 2012) (concluding that a loan servicer assigned both the note and mortgage is not a debt collector pursuant to the FDCPA unless "the transfer of the debt in default was solely for the purpose of facilitating collection of the debt for another"), *report and recommendation adopted*, 2012 WL 1381193 (E.D.N.Y. Apr. 18, 2012); *Burns*, 655 F. Supp. 2d at 254 (finding that the defendant was not a debt collector where the record showed that (1) the defendant sought to collect its own debt from the plaintiff, (2) the defendant "[was] in the business of, among other things, financing mortgages for home buyers," and (3) the defendant's "principal business" was not debt collection").

Plaintiffs fail to allege that Defendant is a "debt collector" under the FDCPA. First, Plaintiffs' statement that Defendant is a "debt collector," (Compl. ¶ 138), without any additional facts, is conclusory and, therefore, insufficient to establish that Defendant is a "debt collector" pursuant to the FDCPA. *See Gilkes v. Diamond Resorts*, No. 24-CV-6714, 2026 WL 804022, at *4 (E.D.N.Y. Feb. 2, 2026) (concluding that the plaintiff's allegation that the defendant was a debt collector was conclusory where he alleged that the defendant was "a corporation engaged in the business of debt collection . . . [and] regularly collects or attempts to collect debts owed or asserted to be owed to others, and is a 'debt collector' as defined by 15 U.S.C. § 1692a(6)"

(alterations in original)), *report and recommendation adopted*, 2026 WL 803076 (E.D.N.Y. Mar. 23, 2026); *Costello v. Wells Fargo Bank NA*, No. 21-CV-1388, 2022 WL 1912870, at *10 (D. Conn. June 3, 2022) (quoting 15 U.S.C. § 1692a(6)) (same), *aff'd*, No. 22-1528, 2023 WL 6380061 (2d Cir. Oct. 2, 2023) (summary order); *Goodman v. Discover Fin. Servs., LLC*, No. 21-CV-7500, 2022 WL 1910136, at *2 (S.D.N.Y. June 3, 2022) (quoting same).

Second, even if Plaintiffs sufficiently alleged that Defendant engaged in debt collection, their FDCPA claims would still fail because Plaintiffs do not sufficiently allege that the loan was already in default, as Plaintiffs do not plead that the Mortgage was in default at the time Defendant became servicer of the Mortgage, and, in addition, Plaintiffs allege that the Mortgage and Note were assigned to Defendant, (*see* Compl. ¶ 10 (stating that Defendant was "assign[ed] the Mortgage" in August of 2013)), which means that the defendant is collecting on behalf of itself, not for another entity.[24] *See George v. Nationstar Mortg., LLC*, No. 16-CV-261, 2017 WL 3316065, at *9 (E.D.N.Y. Aug. 2, 2017) ("Although the [c]omplaint alleges that Nationstar received the debt by assignment on July 8, 2013, three months after [the p]laintiff defaulted on the [m]ortgage, it is also clear from the [s]tate [c]ourt [r]ecord and the underlying foreclosure proceeding that Nationstar sought to collect its own debt under the [m]ortgage, and not the debt of another." (internal citation omitted)); *see also Johnson-Gellineau*, 2019 WL 2647598, at *8 ("To hold that anyone who attempts to collect on a debt acquired after default violates the FDCPA, even if collecting the debt for his or her own account, would render the words 'for another' meaningless, a practice the [c]ourt is to avoid."). Because the Complaint fails to allege any facts relating to whether or not the Mortgage and Note were in default at the time Defendant

[24] As discussed *supra* footnote 23, the Court does not consider Plaintiffs' arguments regarding the default of the Mortgage and Note because Plaintiffs attempt to introduce this information in their opposition to Defendant's motion.

began servicing it, Plaintiffs fail to sufficiently allege a FDCPA claim. *See Qurashi*, 760 F. App'x at 68 ("Because the [plaintiffs] do not allege that their home loan was already in default at the time [the defendant] became the servicer of their mortgage, they have not plausibly alleged that [the defendant] was a debt collector under the FDCPA."); *Roth I*, 756 F.3d at 183 ("[T]he amended complaint does not allege that [the defendant] acquired [the plaintiff's] debt after it was in default and so fails to plausibly allege that [the defendant] qualifies as a debt collector under FDCPA."); *Doody, Tr. of Mary Y. Doody Revocable Tr. Dated June 17, 2002 v. Nationstar Mortg., LLC*, No. 21-CV-609, 2023 WL 8476322, at *5 (D. Conn. Dec. 7, 2023) (concluding that the plaintiff failed to sufficiently allege that Nationstar was a debt collector pursuant to the FDCPA because "he has not pled that the mortgage was in default at the time Nationstar began servicing the debt"); *see also Henson*, 582 U.S. at 87 ("For while the statute surely excludes from the debt collector definition certain persons who acquire a debt before default, it doesn't necessarily follow that the definition must include anyone who regularly collects debts acquired after default."); *Daniels v. US Bank Nat'l Ass'n*, No. 15-CV-5163, 2016 WL 5678563, at *3 (E.D.N.Y. Sep. 28, 2016) ("[The plaintiff] alleges no facts suggesting that [the defendant] was assigned the debt for the purpose of collecting on it for some other entity. In fact, [the plaintiff] states that the 'purported [a]ssignment' assigned both the mortgage and note to [the defendant].").

**ii. Plaintiffs fail to allege a FDCPA claim**

Even assuming that Plaintiffs had alleged that Defendant was a "debt collector," Plaintiffs do not sufficiently allege that Defendant violated the FDCPA. The Complaint does not include allegations of the use of deceptive means beyond Plaintiffs' general claim: that (1) Defendant "sent notices" that "misrepresent[ed] [ ] the status of the account and amounts owed," (Compl. ¶ 151), and (2) Defendant "attempt[ed] to collect fees" that were "falsely represented as

being included in the debt amount owed by [ ] Plaintiffs," (*id.*). Plaintiffs' allegations without identifying or alleging which representations were false and deceptive are insufficient "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678. *See Gilkes*, 2026 WL 804022, at *6 (recommending that the plaintiff's FDCPA claim be dismissed where the complaint "d[id] not include allegations of the use of deceptive means beyond [the p]laintiff's general claim that [the d]efendants used 'false and deceptive representations in connection with the collection of the debt'"); *Gabriel v. Equifax, Inc.*, No. 22-CV-2226, 2024 WL 2022263, at *3 (E.D.N.Y. May 7, 2024) (concluding that the plaintiff failed to state a claim under the FDCPA where he alleged that the defendant "violated various provisions of the FDCPA" without "articulat[ing] exactly how [the defendant] has done so"); *Ross v. Cavalry Portfolio Servs., LLC*, 701 F. Supp. 3d 211, 225 (E.D.N.Y. 2023) (concluding that the plaintiff failed to state a claim under the FDCPA where she did not "plead any facts suggesting that [the defendant] communicated false information regarding her debt, beyond conclusory statements suggesting that [the defendant's] statements were 'false, deceptive, and misleading'"), *aff'd*, No. 23-7861, 2024 WL 4404043 (2d Cir. Oct. 4, 2024) (summary order); *Iosilevich v. TD Bank, N.A.*, No. 20-CV-1515, 2021 WL 7709508, at *2 (E.D.N.Y. Feb. 9, 2021) (concluding that the plaintiff failed to state a claim under the FDCPA where he did "not explain how [the] defendants purportedly used 'false, deceptive, or misleading representation or means' in connection with [the] plaintiff's debt"); *Walker v. Pitnell* (*Walker I*), No. 19-CV-4344, 2020 WL 5764102, at *4 (E.D.N.Y. Sep. 26, 2020) (concluding that the plaintiff failed to state a claim under the FDCPA where the plaintiff did not identify "any false, deceptive, or misleading representation that [the defendants] made in connection with the

collection of [the p]laintiff's debt, or allege how or when such representations were made"), *aff'd*, 860 F. App'x 210 (2d Cir. 2021).

The Court therefore grants Defendant's motion and dismisses the FDCPA claims because: (1) Plaintiffs do not sufficiently allege that Defendant is a "debt collector"; and (2) Plaintiffs otherwise do not sufficiently allege that Defendant violated the FDCPA.[25]

**e. The Court defers exercising supplemental jurisdiction over Plaintiffs' remaining state-law claims until Plaintiffs demonstrate that they have a federal claim**

Defendant argues that, assuming the Court dismisses Plaintiffs' federal claims, the Court should not exercise supplemental jurisdiction over Plaintiffs' remaining state law claims pursuant to GBL § 349 and New York Banking Law § 6-k because it would be "contrary to the interests of judicial economy, convenience, fairness and comity." (Def.'s Mem. 20.)

Plaintiffs do not provide any arguments in support of the Court exercising supplemental jurisdiction over their remaining state law claims. Rather, they argue that they have plausibly alleged the remaining state law claims. (Pls.' Opp'n 20–22.)

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); *see One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir.

---

[25] Because the Court dismisses Plaintiffs' FDCPA claims based on Plaintiffs' failure to (1) allege that Defendant is a "debt collector" and (2) allege that Defendant violated the FDCPA, it does not address Defendant's argument that these claims are time barred. The Court cannot adequately address the parties' arguments regarding whether Plaintiffs' FDCPA claims are barred by the applicable statutes of limitations because Plaintiffs do not allege in the Complaint any specific dates when Defendant violated the FDCPA. *See Off. of Caroline Beverly Howard Est. v. Nationstar Mortg., LLC*, No. 24-CV-1383, 2026 WL 893244, at *4 (D. Conn. Mar. 31, 2026) (declining to rule that the plaintiff's FDCPA claims were barred by the statute of limitations where the complaint "does not allege many specific dates"); *Anzelone v. ARS Nat'l Servs., Inc.*, No. 17-CV-4815, 2018 WL 3429906, at *4 (E.D.N.Y. July 16, 2018) (declining to rule that the plaintiff's FDCPA claims were barred by the statute of limitations where the complaint did not state when the plaintiff received the debt collection letter).

2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims . . . ."); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)); *see Chinniah v. Fed. Energy Regul. Comm'n*, 62 F.4th 700, 703 (2d Cir. 2023) (quoting *id.*) (same).

Since the Court dismisses Plaintiffs' federal claims, the Court defers exercising supplemental jurisdiction over Plaintiffs' remaining claims pursuant to GBL § 349 and New York Banking Law § 6-k. *See Banks v. Bellevue Hosp.*, No. 24-CV-369, 2024 WL 3676930, at *6 (S.D.N.Y. Aug. 6, 2024) (deferring ruling on whether to exercise supplemental jurisdiction over state-law claims where the court granted the plaintiff leave to file an amended complaint), *appeal dismissed*, No. 24-2452, 2025 WL 2714222 (2d Cir. Mar. 20, 2025) (summary order); *Campbell v. Off. of Mental Health*, No. 24-CV-784, 2024 WL 2784331, at *5 (S.D.N.Y. May 29, 2024) (same); *Matthew v. Bldg. Sec. Servs. Owner*, No. 24-CV-2447, 2024 WL 1860172, at *4 (S.D.N.Y. Apr. 29, 2024) (same); *Zimmerman v. Dep't of Educ.*, No. 24-CV-5387, 2024 WL 4635400, at *3 (S.D.N.Y. Oct. 28, 2024) (same); *see also Costello v. Wells Fargo Bank, NA*, No. 22-1528, 2023 WL 6380061, at *2 n.2 (2d Cir. Oct. 2, 2023) (summary order) ("Because the

district court properly dismissed the [FDCPA] claims — the only claims over which it had original jurisdiction — it did not abuse its discretion by declining to exercise supplemental jurisdiction over [the plaintiff's] state law claims."); *Walker v. Pitnell* (*Walker II*), 860 F. App'x 210, 212 (2d Cir. 2021) (same); *Boyd v. J.E. Robert Co.*, 765 F.3d 123, 126 (2d Cir. 2014) ("[The Second Circuit] also conclude[d] that, after properly granting summary judgment on the FDCPA claims, the [d]istrict [c]ourt had discretion not to exercise supplemental jurisdiction over the state law claims."); *Ballentine v. Credit One Bank*, No. 26-CV-4194, 2026 WL 2389570, at *5, 8–9 (S.D.N.Y. Aug. 13, 2026) (declining to exercise supplemental jurisdiction where the court dismissed the plaintiff's federal claims, including a TILA claim); *Stone v. Wells Fargo Bank N.A.*, No. 24-CV-6933, 2026 WL 2210888, at *5 (E.D.N.Y. July 31, 2026) (declining to exercise supplemental jurisdiction where the court dismissed the plaintiff's RESPA, TILA, HOEPA, and FDCPA claims); *Marion*, 2026 WL 864006, at *6 (declining to exercise supplemental jurisdiction where the court dismissed the plaintiff's TILA claim); *Harroo-Lavine*, 2026 WL 873012, at *8 (declining to exercise supplemental jurisdiction where the court dismissed the plaintiffs' RESPA, TILA, and FDCPA claims); *Rodriguez v. TD Bank, N.A.*, No. 26-CV-1133, 2026 WL 836697, at *4 (S.D.N.Y. Mar. 26, 2026) (declining to exercise supplemental jurisdiction where the court dismissed the plaintiffs' TILA and Fair Credit Reporting Act claims); *Davis v. Westlake Servs., LLC*, No. 23-CV-6163, 2025 WL 239411, at *4 (S.D.N.Y. Jan. 16, 2025) ("[B]ecause [the court] lack[s] subject-matter jurisdiction over [the p]laintiff's TILA claims, [the court] also lack[s] supplemental jurisdiction over his related state-law claims."); *Doody v. Bank of Am., N.A.*, 709 F. Supp. 3d 71, 82 (D. Conn. 2024) ("Having dismissed [the p]laintiff's FDCPA claim, the [c]ourt declines to exercise supplemental jurisdiction over the remaining state law causes of action."); *Jaber v. Complete Payment*

*Recovery Servs., Inc.*, No. 22-CV-2689, 2022 WL 3543500, at *4 (E.D.N.Y. Aug. 18, 2022) ("The [c]ourt cannot exercise supplemental jurisdiction over [the p]laintiff's negligence claims and claims under New York's General Business Law because the [c]ourt lacks jurisdiction over [the p]laintiff's FDCPA claims."); *Walker I*, 2020 WL 5764102, at *7 ("Because the [c]ourt has dismissed [the p]laintiff's only federal claims under the FDCPA, it declines to exercise supplemental jurisdiction over [the p]laintiff's state law claims."); *Sutton*, 228 F. Supp. 3d at 276–77 (declining to exercise supplemental jurisdiction where the court dismissed the plaintiff's RESPA claim).

**f. Leave to amend**

Plaintiffs argue that the Court should grant them leave to amend because Rule 15 provides that courts "should freely give leave [to amend] when justice so requires," and "undue delay, bad faith, repeated failure to cure, undue prejudice, [and] futility" are not present. (Pls.' Opp'n 22 (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).)

Defendant does not respond to Plaintiffs' request to amend the Complaint.

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) ("A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." (citations and internal quotation marks

omitted)); *see also Dalewitz v. Procter & Gamble Co.*, No. 22-CV-7323, 2025 WL 764023, at *2 (S.D.N.Y. Mar. 11, 2025) ("[A]bsent a showing of prejudice or bad faith, practice in this Circuit is to grant a motion to amend." (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993))). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Shasha v. Malkin*, No. 25-442, 2026 WL 320201, at *2 (2d Cir. Feb. 6, 2026) (summary order) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)); *see also Bus. Casual Holdings LLC v. YouTube, LLC*, No. 22-3007, 2023 WL 6842449, at *1 (2d Cir. Oct. 17, 2023) (summary order) ("Proposed amendments are futile if they would fail to cure prior deficiencies or state a claim." (quoting *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015))); *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) ("Amendment is futile if it fails 'to cure prior deficiencies.'" (quoting *Panther Partners Inc.*, 681 F.3d at 119)). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW*, 783 F.3d at 389. "If the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'" *Kong v. Lau*, No. 24-CV-3041, 2025 WL 3496383, at *7 (E.D.N.Y. Dec. 5, 2025) (quoting *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2015)). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)).

"Leave to amend . . . should generally be denied in instances of . . . bad faith." *Exelis*, 824 F.3d at 28 (internal quotation marks and citation omitted). Courts have declined to allow

leave to amend due to bad faith where new and implausible allegations are provided in late stages of litigation or where a party is seeking leave to amend to gain a tactical advantage. *See, e.g.*, *Third Ave. Commons LLC v. Gobrands, Inc.*, No. 25-CV-934, 2026 WL 533755, at *6 (E.D.N.Y. Feb. 26, 2026) ("[F]inding that a party is seeking leave to amend solely to gain a tactical advantage supports a finding that such an amendment is made in bad faith." (quoting *Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388, 2017 WL 3841841, at *5 (E.D.N.Y. Aug. 4, 2017), *report and recommendation adopted*, 2017 WL 3842350 (E.D.N.Y. Aug. 31, 2017))); *Dalewitz*, 2025 WL 764023, at *3 (quoting *Franco v. Diaz*, 51 F. Supp. 3d 235, 245 (E.D.N.Y. 2014)) (same); *Optionality Consulting PTE. LTD. v. Edge Tech. Grp.*, No. 18-CV-5393, 2021 WL 310942, at *5 (S.D.N.Y. Jan. 29, 2021) ("[The p]laintiff's new allegations, squarely fitting within the statute of frauds, leads the [c]ourt to believe that they are not being [set] forth in good faith. [The p]laintiff's unexplained recollection of these critical facts . . . cannot be reconciled with the [o]riginal [c]omplaint.").

Plaintiffs may be able to cure some of the deficiencies in the Complaint, and the Court therefore grants Plaintiffs leave to file an amended complaint because (1) leave to amend should be freely given under Rule 15 of the Federal Rules of Civil Procedure and (2) Defendant fails to argue prejudice or bad faith. *See Normal v. Experian Info. Sols., Inc.*, No. 23-CV-9245, 2024 WL 3890103, at *1 (S.D.N.Y. Aug. 20, 2024) ("In th[e Second] Circuit, '[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.'" (second alteration in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991))).

## III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion and dismisses Plaintiffs' RESPA, TILA, and FDCPA claims and grants leave to file an amended complaint of the claims

Plaintiffs can cure. Any amended complaint must be filed on or before October 26, 2026. The Court also defers ruling on whether it can exercise supplemental jurisdiction over Plaintiffs' state-law claims until Plaintiffs demonstrate that they have a viable federal claim.

Dated: September 25, 2026
Brooklyn, New York

SO ORDERED:

/s/ MKB
MARGO K. BRODIE
United States District Judge